CARSON v. COMBE.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1898.)

No. 640.

1. APPEAL FROM PRELIMINARY INJUNCTION — JURISDICTION OF CIRCUIT COURT.
   On appeal from an order granting a preliminary injunction in aid of the appointment of a receiver, where the question as to the jurisdiction of the circuit court was of a grave and vital character, *held*, that the circuit court of appeals would not then determine it, but would decide the question of the propriety of the injunction on its merits, and leave the jurisdictional question until after final decree below, so that the parties, if they so desired, might take it direct to the supreme court.

2. PRELIMINARY INJUNCTION.
   A preliminary injunction in aid of the appointment of a receiver, and to prevent the defendants from fraudulently using a judgment rendered in their favor by consent, *held* to have been properly granted.

Appeal from the Circuit Court of the United States for the Western District of Texas.

T. H. Franklin and Duval West, for appellant.
C. L. Bates and W. N. Parks, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge. The following is a substantial statement of the allegations of the bill:

(1) This bill, filed by appellee on June 14, 1897, in the United States circuit court at Brownsville, Tex., against appellant and James Stillman and 19 other persons, defendants, is an ancillary bill, filed as ancillary or auxiliary to suit No. 248 (Heirs of Miguel Salinas v. William Kellogg et al.) on the law docket of the same court. With the exception of the United States and Kellogg, the same parties to this suit were parties to the former suit, and the rights and interests and issues of fact and title involved in the former suit at law are further litigated in this suit in equity; and the present suit seeks, as against Carson and Stillman, to obtain, and render available to plaintiff and some of defendants, the advantage, fruits, and benefits of the proceedings and judgment in the former suit, and to enjoin Carson and Stillman from making fraudulent use of that judgment, and to enforce and adjust certain equitable rights and interests of plaintiff and some of the defendants, arising out of, and inseparably connected with, the proceedings and judgment in, and subject-matter of, the former suit.

(2) It is averred in the bill that on or about May 1, 1846, Zachary Taylor, then a brigadier general of the army of the United States, commanding a military force of the United States army in the state of Texas, on the lower Rio Grande, and acting for and under the authority of the United States, at the city of Brownsville, Cameron county, Tex., forcibly entered upon and took possession of a tract of land containing about 358.8 acres, and established thereon, for the United States, a military fort and garrison, called "Ft. Brown," and forcibly occupied the same by and with a military force of the United States, and that said tract of land has been in the actual and exclusive possession of the United States, as a military fort, from May 1, 1846, down to the present time, and that at the time of the seizure the tract of land was private property belonging to Miguel Salinas and others, then resident citizens of Texas, to whom no compensation was ever made for the land, and the title to which was never acquired by the United States, except at the time and in the manner set out in the bill. It is further alleged in the bill that appellee's testator, Stephen Powers, in his lifetime acquired a perfect and valid legal and equitable title in fee simple to an undivided one-half of said tract, by a complete chain of title from the sovereignty of the soil to himself, and that on February 5, 1882, he died seised of the same, and that the plaintiff is now his sole executor.

(3) From May 1, 1846, the date of the seizure, to the present, the persons and estates named as parties to this suit, and those under whom they claim, have asserted claim to parts of said tract of land, and sought payment for same, and for its use and occupation, from the government; and to pay the owners for the land and its use and occu-

pation, and to extinguish their claims and vest a good and valid title to the land in the government, the congress of the United States on March 3, 1885, made an appropriation in these words:

"To enable the secretary of war to acquire a good and valid title for the United States to the Fort Brown reservation, Texas, and to pay and extinguish all claims for the use and occupancy of said reservation by the United States, the sum of one hundred and sixty thousand dollars; provided, that no part of this sum shall be paid until a complete title is vested in the United States, and the full amount of the price, including rent, shall be paid directly to the owners of the property."

(4) On June 29, 1886, nine of the heirs of Miguel Salinas filed suit (trespass to try title) in the district court of Cameron county, Tex., against William Kellogg, colonel of the United States army, commanding officer of Ft. Brown, to recover the title and possession of said tract of land; and on June 30, 1886, defendant Woodhouse filed his petition of intervention in the suit in the state court, claiming to be the owner of the share of four of the Salinas heirs in the land.

(5) On application of defendant Kellogg, the suit instituted in the state court was removed to the United States circuit court for the Western district of Texas, Brownsville division, the transcript from the state court having been filed in the federal court on November 3, 1886, and entered on the law docket of that court, No. 248 (Heirs of Miguel Salinas v. William Kellogg et al.), and was proceeded with as a suit pending in that court.

(6) On December 27, 1886, Rudolph Kleberg, district attorney for the Western district of Texas, acting under instructions from the attorney general of the United States, intervened for the government in suit No. 248, and had the United States made party defendants therein, and filed answers for Kellogg and the United States, and pleaded not guilty, and set up outstanding title to Ft. Brown Reservation in a large number of persons,—among them, the defendants Carson, administrator, and Stillman, and the heirs, devisees, legatees, and estate of Stephen Powers, deceased, the appellee's testator, and also all the other parties to the present suit who were not plaintiffs in the former suit; and upon motion of the district attorney all of said persons were made parties defendant to that suit, and citation ordered to be issued for them, but defendants Stillman and Carson and others, in writing, waived the issuance of citation, and voluntarily entered their appearance and submitted themselves to the jurisdiction of the court in that suit, and those not appearing were served with citation.

(7) The object and purpose of the United States in intervening in the former suit, pleading outstanding titles in said persons, and having them made parties to that suit, as shown by their pleadings and the allegations of the bill in the present suit, were to secure a final and speedy adjudication of the true title to Ft. Brown reservation, and to have that title vested in the United States by a judgment to be rendered in said former suit, and then to make compensation to the owners of the land. It appears from the averments of the bill that the true intendment of the act of congress in making the appropriation to pay for Ft. Brown is: First, that the United States should part with

no portion of said fund until a good, valid, absolute, and indefeasible title to Ft. Brown reservation should be vested in the United States; and, second, that the full price for said reservation, including rents, should be paid directly to the real, bona fide owners of the property. The government desired to speedily acquire a clear title to the property, and pay the owners for it, and it (the government) sought to consummate this purpose and carry out the policy of the statute by intervening in the former suit.

(8) It appears from the bill and exhibits that to the former suit (No. 248) at law there were 24 defendants, all of whom answered, and all of them, except the United States and Col. Kellogg, filed pleas in reconvention, claiming title to portions of said tract of land, which claims all conflicted with each other. The pleadings of the parties are, in substance, set out in the bill, and the portions of the land claimed by each of the claimants is stated. It is averred in the bill that the pleadings in suit No. 248 presented to the court, for its examination, consideration, and adjudication, a case of facts and of law of the greatest intricacy, difficulty, and complexity, requiring great skill, labor, care, patience, and perhaps years of litigation, for its final solution; and, without some compromise or agreement whereby an indefeasible title to said property could be at once vested in the United States, there was great danger that the appropriation could not be made available, or would be ultimately consumed in litigation, or in some manner lost to the owners of the property, and that in view of the great number of persons claiming an interest in the property, the nature of the facts and circumstances upon which alleged titles were based, and the ancient character of some of the alleged titles, and the frequent and complicated character of the transfers of said property during 40 years, and the long duration of the controversy between the United States and the owners and claimants of the property, and the great number of deaths and descents cast and devises made, and the difficult and complicated questions of law arising upon the facts, it was absolutely impossible to make a valid title to said reservation to the United States, except through the judgment of the court in said suit No. 248; and when the issues were fully made by the pleadings in said suit the parties and their counsel at once became fully impressed with these difficulties, and the great importance and necessity of removing them, and became and were exceedingly desirous of agreeing upon some plan whereby a valid title to said reservation could be immediately vested in the United States in and by means of a judgment of the court in said suit, followed by proper conveyances, with the view of having the real issues made by the pleadings settled after the title should be vested in the United States, and the appropriation secured to those parties who should thereafter be found entitled to receive the same.

(9) It is averred in the bill, and fully shown by Exhibit D, that on July 13, 1887, the plaintiff, defendants Stillman and Carson, and 19 other parties to said former suit (No. 248), executed, acknowledged, and delivered an agreement in which it was recited as follows: First, that it was likely that the said suit would be called for trial the following day, and the then present term of the court would not con-

tinue further than that week; and, second, that there was little probability of working out a complete and accurate adjudication of the rights of the parties to the suit (who claimed fractional interests in said land) by the judgment of the court, "based on the verdict of the inevitable jury"; and, third, that it was apprehended that unless in that court, and by its judgment, a perfect title could be adjudicated to certain of the parties, so as to meet the requirements of the Washington authorities, there was danger of losing altogether the appropriation of $160,000 made to pay for Ft. Brown reservation; and, fourth, it was primarily desirable and necessary to have such a verdict and judgment in said suit as would be attended with no complication, and would be satisfactory to the department at Washington; and, fifth, it was secondarily desirable to agree upon a method of working out and ascertaining the exact rights and interests of each party to the suit after the judgment and conveyances to the government by the parties so adjudicated to be the owners, and the payment of the $160,000 therefor.    And in said agreement it was stipulated to the following effect, viz.:    First. That in the trial of said suit the issues made by the pleadings therein should not be litigated or adjudicated, but that a verdict and judgment should be rendered and entered therein, vesting the complete title to Ft. Brown reservation, and all money owing by the United States for its use and occupation, in defendants James Stillman and Thomas Carson, administrator.    Second. That, upon procuring such verdict and judgment, Stillman and Carson should make the appropriate deed of conveyance, vesting a good and valid title in and to said reservation and the rents in the government of the United States, and a warrant should be procured and obtained by them from the secretary of war upon the treasurer of the United States for the said fund of $160,000 appropriated as aforesaid, and $20,000 of said fund should be immediately paid to certain agents at Washington, D. C., for services in procuring said appropriation, and that the balance of said fund ($140,000) should without delay be deposited in the bank of Ball, Hutchings & Co., of the city of Galveston, Tex., to the credit of Messrs. William P. Ballinger, T. N. Waul, and David B. Culberson, arbitrators selected in and by said agreement for the purposes in said agreement stipulated, and to the effect in the bill set out.    Third. That the parties to said suit by said agreement submitted their respective claims to said Ft. Brown reservation, and to said fund of $160,000, and the avails thereof, to the arbitration, determination, and award of said Ballinger, Waul, and Culberson, or any two of them, which should be final and conclusive of all such claims and rights, and the issues made by the pleadings in said suit No. 248, and that upon the decision of said arbitrators the said fund, less certain expenses in said agreement provided for, should be immediately paid by the arbitrators to the prevailing parties, according to their respective rights as found and determined by the decision and award.    Fourth. It was provided in the agreement that, if either or any of said arbitrators should fail or refuse to act, others should be appointed in the manner therein stated.    Fifth. That the arbitrators should go to the city of Brownsville as soon as practicable, and there try, arbitrate, award, judge, and determine each and every of said re-

spective claims and demands, and order the payment and distribution, and make distribution accordingly, of said fund, and the award of any two of the arbitrators should be binding and conclusive upon said parties and fund.

(10) It is averred in the bill that on July 14, 1887, a verdict and judgment were, by the consent of parties, and in conformity to said agreement, rendered and entered in said suit, in and by which defendants Stillman and Carson recovered the title and possession of the whole of Ft. Brown reservation, and the claims for use and occupation against all of the parties to said suit, including Col. Kellogg and the United States.

(11) It is averred in the bill that on the formal trial in suit No. 248 the issues made by the pleadings were not contested or litigated, nor the rights of the parties adjudicated; that no evidence was offered upon said trial upon any of the issues made by the pleadings.

(12) It is averred in the bill that the title to Ft. Brown reservation was by said judgment vested in Stillman and Carson in trust for the use and benefit of all the parties to suit No. 248, and for the purposes stipulated in said agreement, and that Stillman and Carson accepted the title to said property as trustees for said use and purposes.

(13) It is alleged in the bill that Mr. Kleberg, United States district attorney, though he did not sign the same, was nevertheless a party to the agreement of July 13, 1887, for the United States, and consented to the judgment of July 14, 1887, and the United States have accepted the benefit of said agreement and judgment, and that it was the understanding of the court which rendered the judgment, as well as all parties to the suit, and their counsel, that the title to said property should be by said judgment vested in Stillman and Carson in trust for the purposes mentioned in said agreement, and for none other.

(14) It is averred in the bill that on April 26, 1895, pursuant to the agreement and judgment, Stillman and Carson delivered to the United States their deeds and releases to Ft. Brown reservation, and the claims for use and occupation, and received from the United States treasury the full amount of $160,000 appropriated to pay the same, and that they received said sum in trust, and as trustees, as provided in said agreement.

(15) It is alleged that Stillman and Carson fraudulently concealed from plaintiff and the other claimants the fact that they had collected the fund, and fraudulently appropriated and converted the whole of the $160,000 to their own use and benefit, and are fraudulently using the judgment of July 14, 1887, by which the title to the land was vested in them in trust, for the purpose of defrauding all the claimants of any and all benefit of said judgment, and of their interest in said fund, and claim and right to said land, and are conspiring with each other and with other persons for the purpose of fraudulently preventing and defeating a decision and settlement of the conflicting claims to said land and funds, and a distribution of the fund to the true owners thereof by arbitration; that Mr. Ballinger, one of the arbitrators, has departed this life, and another one has declined to act, and Stillman and Carson decline to supply their places and proceed

with the arbitration as provided in the agreement, and refuse to account for the trust fund of $160,000, and refuse to recognize the rights of the other claimants in said fund, and refuse to give plaintiff and the other claimants any information whatever concerning said fund.

(16) It is shown by the averments of the bill and exhibits that the conflicting claims to Ft. Brown reservation and said fund, and the various issues raised in regard thereto by the record and pleadings in suit No. 248, are now, and remain, wholly undetermined, undecided, and unadjusted; that Stillman and Carson have by their wrongful acts defeated the plan for arbitration, and rendered necessary an application to this court for a continuation and completion and final adjudication of all the issues raised and the matters partly litigated in the former suit, and for an adjudication of the respective claims to said fund.

(17) It is averred in the bill that defendant Carson is a citizen of the state of Texas, and resides at Brownsville, Cameron county, Tex.; that, so far as visible property is concerned, he is insolvent, and has no visible property in this state, except such as is by law exempt from seizure and sale under execution or attachment, and that he (Carson) is the duly and lawfully authorized agent of defendant Stillman in Texas, and represents their mutual interests in resisting all efforts of the said claimants to compel an accounting by them of the trust fund of $160,000.

(18) The bill states the names of the attorneys of record of all the parties in the former suit, and it is shown that in that suit defendant Stillman was represented by Mr. James R. Cox, of New York, and Messrs Ballinger, Mott & Terry, of Galveston, Tex., and that the last-named firm also represented defendant Carson.

(19) The prayer of the bill is: First. That an interlocutory decree be made, requiring defendants Stillman and Carson to deposit the fund of $160,000 in the registry of the court, or pay it to a receiver, as the court might direct; second, that all the conflicting claims of the claimants to said land and fund, as the representatives of the land, be investigated, considered, adjudicated, and settled in this suit; third, that defendants Stillman and Carson be enjoined from making fraudulent use of said judgment, and be compelled to account to the court for the fund of $160,000, with interest, and that the trust created by the said agreement and judgment be enforced by the court; fourth, that on final hearing plaintiff have a decree against Stillman and Carson and the estate of Cavazos for one-half of the fund, interest, and cost, and that the other one-half be paid to the claimants found by the decree of the court entitled to the same; (5) there is the usual prayer to make parties defendant, and for process and service, and for general relief.

On June 25, 1897, an order for substituted service, at the application of complainant, was issued by the court, granting that subpoena issue, directed to James Stillman, to be served by the marshal of the Eastern district of Texas upon M. F. Mott, the attorney of record of Stillman in the action at law (No. 248), and granting further that subpoena issue, directed to James Stillman, to be served upon him by the marshal of the Southern district of New York. The marshal's return

on the subpœna served upon M. F. Mott shows that Mott requests the marshal to state in his return that he does not represent James Stillman. In accordance with the order of court, James Stillman was served with subpœna by the marshal of the Southern district of New York. On June 14, 1897, complainant applies by motion to the court for an interlocutory decree, requiring said fund of $160,000 to be paid into court, or for a receiver, to be appointed by the court, and for the issuance of temporary writs of injunction as prayed for in his bill. The hearing of this motion was set down for July 15, 1897, at Austin, Tex., and service of the motion and time of hearing was served through the post office, by registered mail, on M. F. Mott and James Stillman. On July 15, 1897, Thomas Carson, for himself and as administrator, etc., filed his reply to the motion for injunction and receiver, and, showing cause why the motion should not be granted, states under oath that no part of said $160,000 was ever received by him, or held by any one under his direction or control. He further answers and shows, but not under oath, that all of the parties are not before the court; that James Stillman is beyond the jurisdiction of the court; that the original action at law (No. 248), and all the issues raised therein, have been determined and adjudicated by a final judgment duly rendered and enforced; that the agreement to arbitrate was not filed in the action at law; that there was no fund in the court, and the court knew of no such fund, at the time when title was adjudicated; that no fund has ever been within the custody of the court, or within this district; that a breach of the independent agreement can only be remedied by an independent suit; that complainant and defendant Carson are citizens of Texas; that the court is without jurisdiction; that the fund sought is not within the custody of the court, or subject to its process; that the suit is not dependent or ancillary, or a continuation of the action at law (No. 248): and that the bill is without equity.

The foregoing statement shows the case as it was presented to the circuit court, and on which that court passed its decree adjudging that it had jurisdiction of the cause as being a suit ancillary to case No. 248 on the law docket of the court, and proceeded to appoint a receiver to take charge of the fund, under the direction of the court, pending the progress of proceedings in the suit, and, in connection therewith, enjoining the defendants Carson and Stillman from using the judgment in the law case for the purpose of depriving the plaintiff and the other defendants in the suit of their interest in the fund, and from refusing to pay the same into the hands of the receiver, and from refusing to account to the court therefor. The errors assigned are, first, that the court erred in holding that it had jurisdiction in this suit; naming four grounds to support this assignment. The second, third, and fourth errors assigned are to the effect that the court erred in granting the injunction herein, and in appointing a receiver.

The case presented by the bill and its exhibits shows a large trust fund held by the defendants Carson and Stillman as trustees for the other defendants and for the complainant; that the trustees have renounced their trust, and are refusing to execute it, or take steps to cause it to be executed; that the original provisions for its execution

through the aid of arbitrators cannot now be effective, and that, to fix the distributive shares of the beneficiaries, it becomes necessary to resort to a court of equity; that the nature of the claims of the beneficiaries is such that it will require a considerable time to adjust and fix the respective shares of the distributees; that, pending the progress of this proceeding, adequate measures should be taken for the safe-keeping and control of the fund, under the direction of the court. In such a state of case, it cannot be seriously questioned that the chancellor would be authorized, if not required, to take care to preserve the fund. Nor can it be seriously urged that the appointment of a receiver, to be the hand of the court in doing that work, was an unusual or improvident exercise of the chancellor's authority; and the injunction granted in aid thereof, if not necessary, was not hurtful. An interlocutory decree appointing a receiver will not support an appeal. Highland Avenue & Belt Railroad Company v. Columbia Equipment Company (decided by supreme court Jan. 3, 1898) 18 Sup. Ct. 240. And when such a decree appointing a receiver embraces, as in this case, the granting of an injunction, there may be no necessary connection between these different parts of the decree, and the part granting the injunction may be reversed without affecting the other part. It is true that on appeal the circuit court of appeals will consider the whole case, and will determine upon the whole case whether it should take further action than the disposition of the injunction on the merits requires. Atlanta & F. R. Co. v. Western Ry. of Alabama, 2 U. S. App. 227, 1 C. C. A. 676, and 50 Fed. 790; Smith v. Iron Works, 165 U. S. 518, 17 Sup. Ct. 407.

It is clear, upon the face of this record, and from all the argument of counsel, both by brief, and orally in the presence of the court, that the real question involved in this appeal, and underlying the whole assignment of errors, and giving the only substantial support that any of the specifications can rest upon, is the question of the jurisdiction of the circuit court for the Western district of Texas to entertain the complainant's bill. The circuit courts of the United States being courts of limited jurisdiction, the matter of jurisdiction is in every case one of supreme concern. In some cases, however, the jurisdiction of the court, or the want of it, is so apparent as to be beyond serious question, and in very many cases a question of jurisdiction is attempted to be raised on wholly unsubstantial ground. This case does not fall within either of these classes, but is clearly one where the matter of jurisdiction is not only, as always, of paramount concern, but the question arising with reference to it is grave. It is of such gravity and vital character that in our opinion the appeal allowed from the interlocutory decree should not be suffered to become the vehicle of bringing it up for premature determination. In any case in which the jurisdiction of the court is in issue, the wisdom of our laws gives a direct appeal to the supreme court. It is true that we could avoid the very delicate responsibility of provisionally deciding this issue of law, that must ultimately appeal to the supreme court, by certifying the question to that court, and asking for its instruction. It is true, also, that, unless the question is carried to the supreme court by our request for instruction, it cannot reach that

high tribunal until after final hearing of the suit in the circuit court. McLish v. Roff, 141 U. S. 661, 12 Sup. Ct. 118. But the reason which makes this delay the established procedure in a direct appeal to the supreme court in any case in which the jurisdiction of the court is in issue is strongly persuasive to our minds that in such a case as this we should not pass on that issue on an interlocutory appeal, but should dispose of the matter of injunction on the merits, and suffer the issue as to the jurisdiction of the court to rest on the decision of the circuit court until the suit shall proceed to the hearing, and to the passing of the final decree, when the parties aggrieved can have their election of appeals, as clearly pointed out to them in McLish v. Roff, supra.

If it does not clearly appear upon the face of the record that the action (No. 248) was begun, conducted, and concluded on an agreement of all parties that the legal title to the land of the Ft. Brown reservation, and the rents due for its occupation, should be as speedily as possible assured to the United States, in order that the contesting claimants should transfer their claims from the land, which they did not expect or wish to recover, to the appropriation which had then recently been made by congress after long and active solicitation by or on behalf of the parties, it is at least strongly implied, from the conduct of all the parties, as shown by the face of the record, that the allegations of the bill in this case in that regard are true; and, without the allegations of the bill, such a state of case would have been presumed by any one conversant with the conduct of litigated controversies affecting such numerous parties and large values. A strong conclusion of fact would take hold of the experienced observer, that there was underlying the judgment in that case an agreement substantially similar to that which the bill in this case shows to have been made. The act making the appropriation was a public act, of which the court had judicial cognizance, and doubtless actual knowledge. The court was held at a point on, or in sight of, the Ft. Brown reservation; and the manner of its original occupation, and of its continued use by the government, was matter not only of local, but of public, history. The action that the United States district attorney had taken in the case, and the elaborate pleadings of the numerous parties, filed in court only one day before the final judgment, exclude all doubt as to that officer's knowledge of the existence and substantial terms of the agreement that was the true basis of the judgment. If the circuit court for the Western district of Texas had not jurisdiction of the complainant's bill, such want of jurisdiction does not spring from the nature of the obligations charged to have been assumed by certain of the defendants in the bill, and the rights claimed by the complainant for himself and for the other defendants, or from the nature of the relief sought to be obtained, but from the state of the parties, and from some force claimed to inhere in the nature of a judgment at law. To the eye of natural justice it would seem that if that court has not jurisdiction of the parties to the agreement that was in truth the basis of its judgment in cause No. 248, with power to protect the beneficiaries in the trust clearly created by that agreement, and which has so far borne fruit as to bring into the possession of the

trustees the fund which was the material subject, not only of the agreement, but of that litigation, its jurisdiction, proceeding, and processes have been successfully misused by the parties sought by this bill to be charged as trustees. Under all the circumstances of the condition of this case, and the allowance of this appeal, suggested in our foregoing remarks, we deem it best, pending proceedings to a final hearing in the circuit court, to concur for the time being with that court on this question of jurisdiction, and leave it to the parties, after the passing of a final decree, to take the question of jurisdiction, if they so desire, to the supreme court, in the manner provided by law. On the grounds stated, and for the reasons suggested, the decree appealed from is affirmed.