## STILLMAN v. COMBE.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF TEXAS.

No. 174. Argued March 10, 13, 1905.—Decided April 3, 1905.

All the parties to an action in the United States Circuit Court, to determine title to land, united in an agreement that judgment be entered in favor of two of the parties who were to convey the property to a purchaser and to deposit the purchase price in a bank to the credit of arbitrators, who were to determine the exact rights of all the parties and distribute the fund accordingly; judgment was entered and never appealed from or otherwise attacked. *Held* that: The parties in whose favor judgment is entered are not trustees of the court, nor is the purchase price received by them a fund of, or under the control of the court; and a suit brought against them to compel them to account for the purchase money is not ancillary to the original action and the final judgment rendered therein, and jurisdiction of the Circuit Court cannot be maintained on that ground alone.

The appeal to this court on the ground that the Circuit Court had no jurisdiction by a defendant who had not appeared generally is not affected by the fact that one of the defendants has appealed to the Circuit Court of Appeals.

THE facts are stated in the opinion.

*Mr. John A. Garver* and *Mr. James M. Beck* for appellant:

The sole ground of jurisdiction was that the case was ancillary to the action at law; as the United States Circuit Court is of statutory and limited jurisdiction the presumption must always be that the court is without jurisdiction, unless the contrary affirmatively appears from the record. *Turner* v. *Bank*, 4 Dall. 8; *Bors* v. *Preston*, 111 U. S. 252; *Mansfield &c. R. Co.* v. *Swan*, 111 U. S. 379, 383; *Lehigh &c. Co.* v. *Kelly*, 160 U. S. 327, 337. The appellant has not waived his right to object to the jurisdiction, by having served an answer after his plea to the jurisdiction under a limited appearance has been overruled. *Harkness* v. *Hyde*, 98 U. S. 476; *So. Pac. Co.* v. *Denton*, 146 U. S. 202; *Mexican R. Co.* v. *Pinkney*, 149 U. S. 194.

A suit is ancillary when supplemental to, and connected with, a previous suit so·as to form an incident to, and substantially continues it. *Barrow* v. *Hunton,* 99 U. S. 80; *Marshall* v. *Holmes,* 141 U. S. 589, 597; *Raphael* v. *Trask,* 194 U. S. 272, 278.

Ancillary suits fall into two general classes: Where the court has possession of·a fund derived from the previous litigation. Where the court is asked to take some action with reference to a previous judgment or decree rendered by it or to an action at law still pending and undetermined, either to assist in carrying the previous judgment into effect or to correct or modify the judgment. None of those elements exist in this·case.

In this case there was no jurisdiction at law or in equity and the title vested in Stillman and Carson was not a trust.

*Mr. Fred Beall* and *Mr. J. D. Childs,* with whom *Mr. C. L. Bates* was on the brief, for appellees:

In order to constitute a consent judgment, it is not necessary that the agreement to enter it by consent should be filed as a paper in the cause, or brought to the attention of the court, or made to appear in any manner upon the record. The consent of parties is a fact to be proved, like any other fact. *Campbell* v. *Railroad Co.,* 1 Woods, 368.

The agreement and judgment created an express, active, special trust; Fort Brown Reservation was designated as the trust estate; defendants Stillman and Carson were constituted the trustees; the title to the trust estate was by the consent judgment vested in the trustees; the agreement declared the trust, defined its purpose, which was to convert the trust estate into money, by conveying it to the United States, collecting the purchase price, and depositing it to the credit of arbitrators, to be disbursed according to the rights of the parties. *Salinas* v. *Stillman,* 66 Fed. Rep. 677; *Carson* v. *Combe,* 86 Fed. Rep. 202; Pomeroy's Eq. Jur. § 1159; Perry on Trusts, §§ 18, 24, 81, 82, 448; Lewin on Trusts and Trustees, *56, *108.

The Circuit Court in which the consent judgment was rendered is vested with ancillary jurisdiction to entertain this suit

in equity for the purposes of granting to the other parties to the former suit and their privies equitable relief against the unjust, inequitable and fraudulent use of that judgment and the process of the court that rendered it, and to prevent the violation of said contract, and the breach of said trust, and to determine the conflicting claims of the parties to said fund, and to compel appellant to account for the trust fund converted by him and pay the same over to the parties found to be entitled to it, and to secure to the parties the fruits, benefits and advantages of the proceedings and judgment in the former suit, and to regulate the operation of said judgment by engrafting a trust upon it. *Krippendorf* v. *Hyde,* 110 U. S. 276, 287; *Pacific R. Co.* v. *Missouri P. R. Co.,* 111 U. S. 505; *New Orleans* v. *Fisher,* 180 U. S. 185, 199; *Pennock* v. *Coe,* 23 How. 117; *Clark* v. *Mathewson,* 12 Pet. 164; *Dunn* v. *Clark,* 8 Pet. 1; *Jones* v. *Andrews,* 10 Wall. 327; *Root* v. *Woolworth,* 150 U. S. 401; *Freeman* v. *Howe,* 24 How. 450; *Milwaukee &c. R. R. Co.* v. *Soutter,* 2 Wall. 609, 645; *Hatch* v. *Dorr,* 4 McLean, 112; *Babcock* v. *Millard,* Fed. Cas. 699; *Dunlap* v. *Stetson,* 4 Mason, 349; *Cortez Co.* v. *Tannhauser,* 9 Fed. Rep. 226; *Bank* v. *Leland,* Fed. Cas. 9452; *Thompson* v. *McReynolds,* 29 Fed. Rep. 657; *Lamb* v. *Ewing,* 54 Fed. Rep. 272; *Bank* v. *Turnbull,* 16 Wall. 190; *Carey* v. *H. & T. C. Ry. Co.,* 161 U. S. 113.

Besides this suit is ancillary, and the court has possession of and gave the orders which secured the *res,* this, therefore, draws to the lower court all controversies concerning the *res.* *Byers* v. *McAuley,* 149 U. S. 614; *Hayes* v. *Pratt,* 147 U. S. 570; *Green* v. *Creighton,* 23 How. 90; *Chambers* v. *Cannon,* 62 Texas, 293; *Eckford* v. *Knox,* 67 Texas, 205; *Patton* v. *Gregory,* 21 Texas, 513.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court, upon the single question of the jurisdiction of that court. The jurisdiction was sustained *de bene,* on appeal from a preliminary

injunction, by the Circuit Court of Appeals. 86 Fed. Rep. 202; S. C., 29 C. C. A. 660. It is certified that jurisdiction was entertained solely upon the ground that this cause is ancillary to an action at law and the final judgment rendered therein. If that ground fails it is apparent from the record and is not disputed that there is no other. To decide the case it is not necessary to consider anything except the allegations of the bill, and a large part of those may be laid on one side as not material to the question here.

The purpose of the bill is to reach and distribute to the parties found entitled to the same the proceeds of a sale to the United States of land which the defendants Stillman, the appellant, and Carson, as administrator, recovered in the above-mentioned action at law. The land was occupied without right by the United States as part of the Fort Brown military reservation, and on March 3, 1885, Congress appropriated $160,000 to pay for the land and its use and occupation, but not until a complete title should be vested in the United States, the full amount of the price to be paid directly to the owners of the property. The next year certain claimants brought suit for the land, in a state court, against Colonel Kellogg, the officer in command of the reservation. The suit was removed to the United States Circuit Court, the United States intervened, and for the purpose of settling the title set up outstanding rights in third persons. Other known claimants, including Stillman and Carson as administrator, each of whom claimed an undivided half, became or were made parties. By the local practice the respective shares of the parties might have been determined in the action as well as the principal question of the right of all or some of them to recover from Colonel Kellogg. But on July 13, 1887, most, although not all, of the claimants, including Stillman and Carson, made an agreement on which the jurisdiction in the present cause is based.

This agreement recited that the case was likely to be tried the next day, that it was apprehended that unless a perfect

title could be adjudged to some of the parties there was danger of losing the appropriation, that in the time available there was little chance of an accurate adjudication of all rights, that it was primarily desirable to have a judgment which would be satisfactory to the department at Washington, and secondarily to agree on a method of working out the exact rights of the parties, after judgment, conveyance to the Government by those adjudicated to be owners and payment of the money. It also recited the claims of others not parties to the agreement, and the belief of the contractors that those claims would fail at the trial. Therefore it was agreed that the parties to the contract would unite in procuring a judgment for the whole property in favor of Stillman and Carson administrator, that upon its being procured a conveyance should be made by the said owners to the Government and a warrant for the price upon the Treasurer of the United States obtained from the Secretary of War. After a preliminary payment the rest of the money was to be deposited in a named bank in Galveston to the credit of three arbitrators, also named. The parties to the agreement submitted their claims to these arbitrators, with somewhat blind provisions for substitution, and the arbitrators were to give their checks upon the fund to those whom they found entitled for the sums found due.

The next day after this agreement was made, on July 14, 1887, a verdict was rendered for Stillman and Carson administrator, one undivided half to each, and judgment was entered upon the same, both, it is alleged, by consent of parties. But the next steps contemplated by the agreement did not follow as quickly as anticipated. Without any fault of Stillman and Carson they did not get their pay and deliver the deed until April, 1895, nearly eight years later. At that time, according to Stillman's answer, at all events before June 14, 1897, when this bill was filed, according to the allegations of the bill, one of the arbitrators named was dead, and another refused to act, so that the arbitration agreed upon was impossible in its original form. It also appears from the decree

that Stillman had expended large sums in collecting the money from the United States. The bill alleges that Stillman and Carson fraudulently appropriated to their own use the whole fund of $160,000 received from the United States. It further alleges that they are conspiring fraudulently to prevent a decision by arbitration, as agreed, and fraudulently are using the judgment to deprive the true owners of their rights. On these allegations the bill seeks not to have the arbitration carried out but to obtain a distribution of the fund by the court.

We are somewhat at a loss to add anything to a statement of the case to show how utterly without foundation is the claim of jurisdiction over the bill as an ancillary suit. The bill does not seek either to disturb the judgment or to have anything done towards carrying it out. The judgment was satisfied, and the functions of the court in the former case were at an end when the land was recovered. Stillman and Carson cannot be using it fraudulently or in any other way. Its uses all are over. The court had nothing to do with the subsequent sale of the land, and still less with the distribution of the purchase money when the sale was made. There neither was nor ought to have been any fund in court. It may be that the judgment would not have been the same but for the agreement of some of the parties upon those matters. But the bill does not allege that it was obtained by fraud, and, as we have said, does not seek to set it aside. The agreement no doubt put Stillman and Carson in a position of trust, but, no matter to whom it was known, it did not make Stillman and Carson trustees of the court, as they are called in the bill. It did not extend the duties of the court beyond the recovery of the land to seeing that the parties who recovered it, in case of a subsequent sale, should pay over in due proportion to those equitably entitled. The parties gave up their right to have the court decide who had rights in the land and the extent of their shares, and substituted a contract and a decision out of court. They still rely upon the contract, and they must be left to their remedy upon it.

It is suggested that the affirmance by the Circuit Court of Appeals of an interlocutory decree appointing a receiver and issuing a preliminary injunction against Stillman and Carson using the judgment for the purpose of depriving the other parties in interest of their rights in the $160,000, in some way prejudices the present appeal. It is enough to say that the action of the Circuit Court of Appeals was on the appeal of Carson alone, Stillman not having appeared in the action.

*Decree reversed, with directions to make restitution to the appellant and to dismiss the bill.*