# TEXAS CONSOL. COMPRESS & MANUFACTURING ASS'N v. STORROW et al.[1]

### (Circuit Court of Appeals, Fifth Circuit. February 21, 1899.)

### No. 793.

1. CIRCUIT COURT OF APPEALS—RIGHT OF APPEAL.

An appeal may be taken to the circuit court of appeals from an order appointing a receiver for a corporation, and granting an injunction restraining its officers from interfering with him.

2. SAME—QUESTIONS PRESENTED FOR REVIEW.

An appeal to the circuit court of appeals from an order appointing a receiver for a corporation, and enjoining its officers from interfering with him, carries up the entire order and merits of the case for review.

3. CORPORATIONS—INSOLVENCY—RECEIVERS—APPOINTMENT—PREFERRED STOCK-HOLDERS—RIGHT TO APPLY.

Preferred stockholders of a corporation are not entitled to the appointment of a receiver pending an action for its dissolution, etc., in the absence of a clear showing that it is insolvent, and that its affairs have been, and are likely to be, mismanaged, to the detriment of stockholders and creditors.

4. SAME.

In the absence of statutory authority, a court of equity should not appoint a receiver, with a view to the dissolution of a corporation, at the instance of a stockholder, unless the corporation is insolvent, or its affairs are being fraudulently mismanaged.

5. SAME—APPLICATION BY CREDITOR.

In United States courts a creditor of a corporation, whose claim has neither been reduced to judgment nor admitted, has no standing in equity to apply for the appointment of a receiver therefor, though the corporation is insolvent.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

This case was before the court at its last term, and was decided May 17, 1898. A statement of the facts up to that date, together with the opinion of the court, will be found in 31 C. C. A. 139, 87 Fed. 612. On a return of the case to the circuit court the complainants filed a supplemental bill, and thereupon renewed their motion for a receiver. In addition to the matters which had been alleged in the several pleadings before the court on first appeal, the supplemental bill contains, in substance, the following allegations:

(1) That on the 3d day of July, 1897, while this suit was pending, the board of directors, contrary to the rights of preferred shareholders, and without authority in fact or law, authorized the president and secretary and treasurer to sell and dispose of the press at Bowie, and said press was then and there sold for $15,000 to the El Reno Compress & Storage Company, a foreign corporation doing business in Oklahoma territory, and said El Reno Company removed the property beyond the jurisdiction of this court. The terms of sale were $7,500 cash, and a note for $7,500, which note was discounted, and sold for $7,000 cash; the total sum realized being $14,500. That complainants were thus deprived of their rights in said press, and a portion of the assets in which they have an interest were unlawfully dissipated. That when this press was sold and removed, it was held under a lease, or claim of lease, by a party at Bowie; and because same was removed said party has instituted suit against the defendant company in the district court of Montague county, claiming a large amount of damages for breach of said lease contract, which suit is undetermined.

(2) That in May, 1897, it was ascertained that the net profits from the business for the current year 1896–97 was sufficient to pay the dividend which ought to be paid upon preferred stock; and said dividend which ought to have been declared, to wit, the sum of $21,000, then and there became a charge

[1] Rehearing denied March 14, 1899.

upon the net earnings of said association, not only for the current year 1896–97, but upon all the previous net earnings of said association.

(3) That at the annual meeting of stockholders in May, 1898, it was shown by report of the president that the sum of $66,936.09 had been expended in betterments and extraordinary improvements, which should have been appropriated as dividends, and which, in fact, represented net earnings which might have been paid as dividends upon the preferred stock. That, in addition to this amount, the defendant had purchased additional ground, to wit, several lots in Tyler, and paid for the same out of the net earnings.

(4) That the entire compress plant at Greenville has been rebuilt out of the net earnings and money received from insurance, which insurance and net earnings should have been applied to and paid upon the claim of the preferred shareholders, the preferred stock having, by the terms of their contract, a lien upon said insurance money; and, the same having been diverted and spent in the erection of the new plant, the preferred shareholders are entitled to have their lien fixed upon said plant.

(5) That since the original and amended bills were filed, H. H. Rowland, who was manager, and J. D. Moody, who was secretary and treasurer, charged in the previous pleadings to be controlling spirits in the conduct and management of defendant's affairs, had resigned their positions, and pretended to have sold out and disposed of all interests in the company. That a certain pretended sale (described in the pleadings) was made to one J. E. Tucker, a kinsman of Moody, by which the control of the company was transferred to Tucker. But, while the stock appears in Tucker's name, it is in fact and in truth the property of Moody, Rowland, and Clark, merely being held in trust for said parties by Tucker, because said parties are notoriously insolvent, and cannot hold said stock in their own names, and because said parties are charged to be responsible for the conditions of said defendant association, and not proper parties to control the same. That Tucker, moved and directed by said parties, at said annual meeting in 1898 elected certain friends and relatives as directors and officers, who have no substantial interest in the property, but who are and will be guided in their management by the wishes of Tucker, who is acting for Moody, Rowland, and Clark, as aforesaid. That Tucker was elected as president. and J. G. Blaine, who resides at Taylor, Tex., also a relative of J. D. Moody, was elected secretary and treasurer. That in the early part of 1898, on several occasions, and at several different times and places, H. H. Rowland, pretending to act in behalf of his brother, B. W. Rowland, attempted to purchase the preferred stock belonging to complainants at a nominal value, said Rowland stating to complainants' attorney that his brother had acquired the stock belonging to the International & Great Northern Railway, and would have the majority of all the common stock in said association when the annual meeting should occur; and that John M. Duncan, who was president, and Claud Wiley, who was secretary and treasurer, would be ousted, and new officers would be elected, such officers to be suggested by his said brother. That at the meeting in 1898 said officers were ousted, and J. E. Tucker elected the directors and officers, he being made president, and Blaine secretary, as aforesaid.

(6) That at said annual meeting, May 10, 1898, a resolution was adopted by which the common stock authorized the directors within six months from that date to issue 6 per cent. bonds, with a first mortgage upon the property of the association, to take up all the preferred stock at its face value, but making no provision for the accumulated dividend; and this, too, notwithstanding at a previous meeting in May, 1897, it had been ascertained that the total value of all the property was $240,000, and there was a floating debt of about $50,000, leaving the net value less than $200,000, and there was preferred stock then outstanding amounting to $310,000; and in said meeting of May, 1897, it was the opinion of the stockholders and directors that the corporation ought to be wound up and disintegrated. That there was then an accumulated dividend, which was a charge upon the net earnings, of $126,000, which dividend was constantly increasing, while the properties were depreciating and decreasing in value. That two of the presses, Dublin and Bowie, are out of the association. the former destroyed by fire, and the latter sold, and removed out of the state. Two of the other presses, to wit, Mar-

shall and Gatesville, cannot be operated without loss, and another of the presses, to wit, the one at Greenville, is badly worn, and a new and powerful press is being built, which, by reason of local influence and difference in physical condition, will make it impossible for the Greenville press to be operated at a profit. That there are only three presses left in the association capable of making money, to wit, Corsicana, Tyler, and Mt. Pleasant. That all the assets of the defendant will not now exceed $200,000, and the liabilities are over $36,000 (complainants believe are over $50,000), and, after deducting the floating debt, the net value of all the property will not exceed $150,000. Since May 4, 1897, when seven presses were in the association, valued at $240,000, the annual report of operations for 1897-98 has been made, which shows gross earnings $56,620.34; and, in addition to this, the Bowie press had been sold for $15,000. Nevertheless, after paying out all money on hand except $10,000, there was a floating debt of over $36,000.

The defendant below filed answers, on the original order to show cause, to the bill and intervening bills, and before the hearing on the last application for a receiver the defendant filed a supplemental answer. In these pleadings the defendant directly and specifically denied every material allegation in the bills of complainants, and alleged what was claimed to be the truth as to each of the complainants' charges relating to the management of the affairs of the defendant company. The original answer is verified by the affidavits of the president, vice president, and treasurer of the defendant company, and the supplemental answer by the affidavits of J. E. Tucker, president, and John M. Duncan. The defendant denied specifically all allegations of the complainants as to net earnings applicable to the payment of guarantied dividends on the preferred stock, and specifically denied that the defendant company was insolvent. Voluminous exhibits and affidavits were submitted on both sides, a specific analysis of which is not necessary at this time. On the hearing of a rule to show cause why a receiver and auditor should not be appointed as prayed for, the circuit court entered an order appointing a receiver, the material portions of which are as follows: "Upon reading and considering the verified bills in this cause, together with the answers of defendant and the evidence adduced on motion of counsel for the complainant, the defendant having been duly notified, and appearing by its counsel, it is ordered by the court that L. A. Pires, of Dallas, in the state of Texas, be, and he is hereby, appointed receiver of this court of all and singular the property, assets, rights, and franchises of the Texas Consolidated Compress & Manufacturing Association of every description, wherever situated, and all money, claims in action, credits, bonds, stocks, leasehold interests, or operating contracts, and all other assets of every kind, and all other property, real, personal, or mixed, held or possessed by said association; to have and to hold the same as officer of, and under the order and directions of, this court. The said receiver is hereby authorized and directed to take possession of all and singular the property above described, and to continue the business of said association. And the said Texas Consolidated Compress & Manufacturing Association, and each and every of its officers, directors, agents, and employés, are hereby required and commanded forthwith to turn over and deliver to such receiver, or his duly-constituted representative, any and all books of accounts, vouchers, papers, deeds, leases, contracts, bills, accounts, money, or other property in his or their hands, or under his or their control; and they are hereby commanded and required to obey and conform to such orders as may be given them from time to time by the said receiver, or his duly-constituted representative, in conducting the said business and in discharging his duty as such receiver; and they and each of them are hereby enjoined from interfering in any way whatever with the possession or management of any part of the business or property over which said receiver is so appointed, or from in any way preventing or seeking to prevent the discharge of his duties as such receiver. Said receiver is hereby fully authorized to continue the business of said association, and manage all its property, at his discretion, in such manner as will, in his judgment, produce the most satisfactory results, and to collect and receive all income therefrom, and all debts due said association of every kind, and for such purpose he is hereby invested with full power, at his discretion, to employ and dis-

charge and fix the compensation of all such agents and employés as may be required for the proper discharge of the duties of his trust."

The defendant company, claiming the order to be an interlocutory one granting an injunction, sued out this appeal, assigning some twenty-one errors, all attacking the order as not justified under the pleadings and evidence. The second, third, seventh, twelfth, and thirteenth assignments need only be recited, and they are as follows: "(2) All of the allegations in complainants' intervening bills, and amendments and supplements thereto, alleging diversion of net earnings into repairs, renewals, and betterments, having been fully met on the part of defendant by uncontradicted proof that all such repairs, renewals, and, betterments were proper and necessary to the continued and efficient operation of the property, were made at a reasonable cost, openly and fairly, by the board of directors, in the exercise of an honest discretion, and with the knowledge and acquiescence of defendant's stockholders, and upon their ratification and approval, and neither complainants nor either of the interveners offering any proof whatever in support of their bills upon this point, the court erred in making and entering said order and decree granting said injunctions and receiver. (3) Defendant's answers and proofs conclusively showing that there had been no net earnings properly distributable as dividends to the preferred stockholders for any of the years for which complainants claim dividends, and that the stockholders and directory of defendant, in the exercise of a reasonable and honest discretion, had made all the repairs, improvements, and renewals complained of from earnings of defendant, and had further used such earnings in the payment of the valid indebtedness of defendant, and that defendant, through all these years for which dividends are claimed, was largely indebted on claims having priority over those of stockholders, and such payments for repairs, renewals, and improvements and on indebtedness leaving no surplus with which to pay dividends, and complainants offering no proof whatever to sustain their allegations on these points, the court erred in making and entering the aforesaid order granting injunctions and appointing a receiver." "(7) Because the pleadings and uncontradicted proof show that defendant was not insolvent, the court erred in the making and entering of said order and decree granting said injunctions and receiver." "(12) Because it appears from the proofs on said hearing that the holders of a large majority of both the preferred and common stock protest against the appointment of a receiver, indorsed the management of defendant, and wish the corporation to continue in the conduct and management of its own affairs, the court erred in granting said injunction, and in appointing said receiver. (13) Because the preferred stock certificates, the resolutions and by-laws under and in pursuance of which they were issued, constitute their holders only stockholders, and not creditors of defendant as to the face of their stock, and there being full proof on the part of defendant that there were no earnings properly distributable as dividends on the preferred stock, the court erred in granting said injunctions and receiver."

The appellees filed in this court a motion to dismiss the appeal, on the ground that the order sought to be reviewed is an order appointing a receiver, and not a distinct order granting or continuing an injunction; that part of the order claimed to be an injunction being merely incidental to the order appointing a receiver, and not the sole or principal part of said order or decree.

John M. Duncan and J. M. McCormick, for appellant.

W. S. Herndon, Ben B. Cain, and W. Frank Knox, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

After stating the case as above, the opinion of the court was delivered by PARDEE, Circuit Judge.

The first question to be passed upon is the motion to dismiss the appeal. The order appealed from was granted on an order to the defendant to show cause, if any it could, why a receiver and auditor should not be appointed as prayed for; and, as set forth in the state-

ment of facts, it is directed mainly, if not entirely, to the appointment of a receiver. The only—in terms—injunctive feature contained in the order is a paragraph to the effect that they, and each of them (that is, the defendant company and its officers), are enjoined from interfering in any way whatever with the possession or management of any part of the business or property over which said receiver is appointed, or from in any way preventing, or seeking to prevent, the discharge of his duties as such receiver. There is strong reason to hold that this provision is surplusage. An inhibition to the company and its officers, as well as to all other persons, to interfere, necessarily results from the order appointing the receiver. Any person connected with the company, or independent of the same, who interferes with the possession of a receiver appointed by the court, or hinders him in the discharge of his duties, is amenable to process for contempt, whether such inhibition is contained in the order appointing the receiver or not. If, after making the above order, the trial court had entered, or if this court now should enter, an order in terms setting aside only the appointment of the receiver, all the other parts of the original order would immediately and without specific mention disappear, and cease to have any force.

In Highland Ave. & B. R. Co. v. Columbia Equipment Co., 168 U. S. 627, 18 Sup. Ct. 240, the supreme court held that an order appointing a receiver, and containing no distinctive injunctive features, was not appealable. After quoting the section of the act creating the circuit courts of appeals (26 Stat. 517, as amended 28 Stat. 666), the court says (page 630, 168 U. S., and page 241, 18 Sup. Ct.):

"Under this section it has been decided that, when an appeal is taken from an interlocutory order or decree granting or dissolving an injunction, the whole of such interlocutory order or decree is before the court of appeals for review, and not simply that part which grants or dissolves the injunction; and that on the hearing in the court of appeals that court may consider and decide the case upon its merits. Smith v. Iron Works, 165 U. S. 518, 17 Sup. Ct. 407; In re Tampa Suburban R. Co., 168 U. S. 583, 18 Sup. Ct. 177. But each of those cases proceeded upon the fact that there was a distinct order granting, continuing, or dissolving an injunction. In the case at bar there is no such order. It is true, following the order of appointment, there is a direction to the defendant, its officers, directors, and agents, to turn over to Campbell the property of which he is appointed receiver; but that is only incidental and ancillary to the receivership. This is obvious, for, if the court subsequently entered an order in terms setting aside only the appointment of the receiver, all the other parts of the original order would immediately and without specific mention disappear, and cease to have any force. Indeed, the mere appointment of a receiver carries with it the duty on his part of taking possession, and the further duty of those in possession of yielding such possession. So that while, as a part of an order appointing a receiver, there is something in the nature of a mandatory injunction,—that is, a command to the receiver to take, and to the defendant to surrender, possession,—yet such command is not technically and strictly an order of injunction."

In Re Tampa Suburban R. Co., referred to above, which is relied upon to maintain the appeal in this case, it is stated in the headnotes that: "Where, as in this case, an order is made by a circuit court, appointing a receiver, and granting an injunction against interfering with his management of the property confided to him, an appeal may be taken to the circuit court of appeals, carrying up the entire order."

An examination of the facts in that case will show that there was a preliminary order of injunction issued before the appointment of a receiver, and that such preliminary order of injunction was continued at the time the receiver was appointed; and that the order appointing a receiver contained a provision "enjoining the officers, directors, and agents of the defendant companies from interfering in any manner whatever with the possession and management of any part of the property over which the receiver is hereby appointed, or from interfering in any way to prevent the discharge of the duties of such receiver," language nearly identical with the order appointing a receiver in the present case. In the opinion of Mr. Justice Fuller it is stated that a review was sought of two interlocutory orders,—one a preliminary restraining order, and the other appointing a receiver, and continuing the injunction, in aid of the receivership; and he says:

"By the seventh section of the judiciary act of March 3, 1891, c. 517 (26 Stat. 826, 828), as amended by the act of February 18, 1895, c. 96 (28 Stat. 666), it is provided: 'That where, upon a hearing in equity, in a district court or a circuit court, an injunction shall be granted, continued, refused or dissolved by an interlocutory order or decree or an application to dissolve an injunction shall be refused in a case in which an appeal from a final decree may be taken under the provisions of this act to the circuit court of appeals, an appeal may be taken from such interlocutory order or decree granting, continuing, refusing, dissolving, or refusing to dissolve an injunction to the circuit court of appeals.' The suit in which the orders complained of were entered is one in which an appeal from a final decree might be taken to the circuit court of appeals, and this even though the question of the jurisdiction of the circuit court was involved. U. S. v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39. An appeal to the circuit court of appeals might, therefore, have been taken from these orders, or from an order refusing to set them aside and dissolve the injunction. We are not called on to say that an appeal would lie from an order simply appointing a receiver, but, where the order also grants an injunction, the appeal provided for may be taken, and carries up the entire order, and the case may, indeed, on occasion, be considered and decided on its merits. Smith v. Iron Works, 165 U. S. 518, 17 Sup. Ct. 407."

Considering these cases adjudged in the supreme court, I entertain grave doubts as to whether an appeal will lie in the instant case; but the majority of the court are of opinion that the appeal is warranted by the decision in Re Tampa Suburban R. Co., supra. The motion to dismiss the appeal is therefore denied.

Upon an appeal from an interlocutory order containing an injunction the circuit court of appeals may consider and decide upon the propriety of the entire order, and even upon the merits of the case. See Smith v. Iron Works, 165 U. S. 518, 17 Sup. Ct. 407. This case was before the court at the last term on appeal from a final decree dismissing the complainants' original bill for want of equity, and in that case (31 C. C. A. 139, 87 Fed. 612, 616) Judge Swayne, delivering the opinion of the court, said:

"The bill alleges, and the demurrer admits, that during the time in question the association had earned sufficient net profits from the operation of the compresses to pay the 6 per cent. dividend on its preferred stock. It also states that the said association wrongfully and willfully diverted the net profits earned by it, and has used and appropriated the same in divers and sundry ways, for the purpose of depriving the complainants of their dividends, and of destroying the value of the preferred stock; and this was done by the majority of holders of the common stock, in fraud of the rights of

complainants. While it has been determined that the claim of the holders of the preferred stock against the corporation is not strictly a debt, but is contingent upon the existence of sufficient net profits to pay, it is evident that preferred stock is only a security for a loan, upon which a certain and definite interest was to be paid while the corporation existed, and the full amount thereof returned to the lender when it was dissolved, before the holders of the common stock should receive anything. The preferred stockholder has no vote or voice in the management of the corporation. He possessed none of the rights of a common stockholder as such, and about the only difference between him and the ordinary lender of money was that he was not to receive his interest unless there were sufficient net profits to pay the same. Therefore, so far as the face value of the preferred stock is concerned, it is in the nature of a debt against the corporation, and the interest thereon becomes a debt as soon as it can be shown that there were profits wherewith to pay it, and becomes a lien prior to the rights of the holders of common stock upon the net earnings, if there were such, for the amount of the dividend, and can be allowed wherever invested by the company. This contention is further maintained by the fact that the company reserved the right to issue, in lieu of the preferred stock, first mortgage bonds, bearing interest at the rate of 6 per cent. per annum, secured by a mortgage upon all the compresses of the association; thus making this loan represented by the preferred stock payable at any time upon the will of the corporation. The other allegations in complainants' bill in regard to judgments; the insolvency of the corporation; 'that it could not be operated as a going concern with profit, and ought to be disintegrated, and the assets divided, and that part of the property had been sold without authority: that their right to have a dividend declared on their stock had been neglected and refused; that their right to receive the full face value thereof had been denied by the corporation.'—are matters that can only be investigated and determined by a court of equity. The investigations of the amount of the net income, and the proper disposition thereof, the marshaling of assets, the priority of liens, and the foreclosure of same, as well as the prayer for injunction and receiver pendente lite, are proper matters for the consideration of the chancellor, and cannot be proceeded with in a court of law. The case made by the bill, if sustained by proof, would undoubtedly entitle complainants to relief."

While holding that the original bill, if maintained, showed equities justifying the interference of the court, our former decision did not undertake to point out particular remedies; but from what was said it is easy to see that there might result an accounting to ascertain if there had been net earnings to such an extent as to warrant the payment of dividends upon the preferred stock, and also that, if certain contemplated acts of mismanagement were insisted upon, an injunction might be issued; but from nothing contained in the opinion does it follow that, if the matters alleged in the original bill should be established, the complainants would be entitled pendente lite to have the entire management of the company's business and property taken out of the hands of its board of directors by the appointment of a receiver; certainly not unless it should also be clearly shown that the company was insolvent, and that its affairs had been, and were likely to be, mismanaged, to the great detriment of the stockholders and creditors. On the case in the present transcript it is an open question with us whether the affairs of the company have lately been managed well or ill, but it does appear that nearly all the holders of preferred stock are also large holders of common stock, and that a large majority of both, the common and the preferred, indorse and approve the management of the company's affairs since 1893, have confidence in the present board of directors and its pur-

poses, and strongly oppose the appointment of a receiver. Whether the company is insolvent depends upon whether or not its past net earnings have been such as to require a dividend on the preferred stock for the years 1893 to 1898, inclusive, in which event the debts due for dividends on such preferred stock, added to the conceded outstanding indebtedness, would probably exceed in amount the value of all the company's property. The test suggested by counsel for appellees, that the preferred stock and the guarantied dividends accruing since 1892 amount to a sum largely in excess of the value of all the company's property, and that, in fact, the common stock has no interest whatever in the company's property, is not the correct test to apply, for, as a matter of fact, at no time since the company was organized has the value of its property been equal to the amount of the preferred stock. Viewing the complainants below (appellees here) as stockholders applying for a receiver, the case made does not show that the company is insolvent in any such sense as will allow a stockholder to maintain a suit for the dissolution of the corporation, and the winding up of its affairs. Unless the corporation is insolvent, or its affairs are being fraudulently mismanaged by its officers in authority, to the detriment of creditors or stockholders, a court of equity ought not, at the instance of a stockholder, in the absence of statutory authority, to interfere to appoint a receiver, with a view to the winding up of the affairs of the corporation. So far, then, as the present suit is one brought by stockholders of a corporation for the protection of its assets and the liquidation of its affairs, no proper case is presented for the appointment of a receiver. The complainants, as creditors, have no equity authorizing them to apply for and obtain the appointment of a receiver, for the simple reason that their claims against the corporation have not been liquidated by decree or judgment, and are denied as existing, exigible debts. It is not necessary to cite authorities to the effect that in the courts of the United States a creditor who has no lien, and whose demand has neither been adjudicated nor admitted, has no standing in equity for the appointment of a receiver of his debtor's property, even if the debtor be insolvent. A discussion of the pleadings and evidence in the record on all the points argued by the very able counsel at the bar and by brief would extend this opinion to great length, and would, in our view of the case, be unnecessary. In our opinion, the case shown does not warrant the appointment of a receiver in the interest of either creditors or stockholders. If the complainants have an accounting as to the net earnings from 1893 to 1898, inclusive, and are allowed injunctions against any fraudulent or ultra vires acts proposed by the management of the company, their rights will be fully protected, at least up to such time as they can show to the court adjudicated demands entitling them to payment, and, failing that, to the liquidation of the corporation as insolvent.

The order appealed from is reversed, and the case is remanded, with instructions to discharge the receiver, pass his accounts, and thereafter proceed in conformity with the views herein expressed, and as equity may require.