## TORNANSES v. MELSING et al.

(Circuit Court of Appeals, Ninth Circuit. May 17, 1901.)

### No. 634.

**1. APPEAL FROM INTERLOCUTORY ORDER—DISPOSITION OF CASE ON MERITS.**

On an appeal from an interlocutory order appointing a receiver and granting an injunction, the circuit court of appeals may dispose of the case on the merits when it determines that there is no equity in the bill which would warrant the granting of ultimate relief to complainant.

**2. MINING CLAIMS—QUALIFICATION OF LOCATOR—BY WHOM QUESTIONED.**

The fact that the locator of a mining claim is an alien cannot be made the basis of an action against him by a subsequent locator to recover possession of such claim; the question of the effect of his alienage on the validity of his location being one which cannot be raised and determined in an action between private persons to which the United States is not a party.

Appeal from the District Court of Alaska, Second Division.

Page, McCutcheon, Harding & Knight, for appellants.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. This case comes before the court on appeal from an order of the district court of Alaska, Second division, made on July 23, 1900, appointing a receiver of a placer mine, with instructions to the receiver to work the mine, and take the gold therefrom, and with an injunction to the appellant against interfering with the receiver's possession or working or operating the mining property. The record in the case has been carefully considered and reviewed by this court in Re McKenzie, in the present case, and in the case of Kjellman v. Rogers, 45 C. C. A. 615, 106 Fed. 775. It is unnecessary here to repeat what is there set forth. It is sufficient to advert to the fact that the bill alleges that on March 11, 1899, the appellee Melsing discovered the placer mining claim in controversy, which is described as "Claim No. 10, above discovery on Anvil Creek," a tributary to Snake river, in the Cape Nome mining district, Alaska, and that he thereupon duly located said claim, and that on May 1, 1899, the appellant wrongfully took possession of the said claim, and ejected the said Melsing therefrom, and proceeded to work said mine with a large force of men, and to take the gold therefrom. Both in support of the application for the appointment of a receiver and in opposition to the same, affidavits were filed on behalf of the respective parties, which set forth the facts and the nature of the contention concerning the mining claim which is in controversy. It appears therefrom that the appellant was the first locator of the claim, that on October 10, 1898, he located and properly measured and staked the same, and that he remained in possession until September 18, 1899, when he conveyed to the Wild Goose Mining Company, and that the said location had not been canceled or abandoned when Melsing made his location. These facts are not disputed by the appellees, but they contend that their force is wholly overcome by the further fact that the appellant was an alien, incapable, under the provisions of the Revised Statutes of

the United States, of locating a mining claim, and that he was and is under contract to herd reindeer for the United States in the territory of Alaska for a period of years, after which he is to be returned by the United States to his native land, and that he is a subject of the kingdom of Russia, and belongs to the Mongolian race. It is upon these facts that the appellees base their claim of title to the mining claim. Upon the theory that the appellant, an alien, was incapable of entering a mining claim, and that therefore his location was void, the appellee Melsing made his attempted location, for the purpose of appropriating the claim to himself. With these facts before us, the question arises whether there is any equity in the bill, and whether the appellees have made, or can make, any showing upon which they can obtain ultimate relief. If the contention of the appellant is correct that the question of the capacity of the prior locator to enter a mining claim under the laws of the United States cannot be raised in such a controversy as this, and that the inquiry whether or not the first locator is an alien can only be made by the United States, or in a proceeding to which the United States is a party, it follows that this court, upon the appeal from the order appointing the receiver, may, and properly should, pronounce its judgment upon the facts so presented. If the appellees can never recover judgment upon the facts, the appellant ought not to be required to go further with the suit. In Smith v. Iron Works, 165 U. S. 525, 17 Sup. Ct. 407, 41 L. Ed. 810, the court, referring to section 7 of the act creating the courts of appeal, said that the intention of its provisions was not only to permit the appellant to obtain immediate relief from an injunction, "but also to save both parties from the expense of further litigation should the appellate court be of the opinion that the plaintiff was not entitled to an injunction because his bill had no equity to support it." In Re Tampa Suburban R. Co., 168 U. S. 583, 18 Sup. Ct. 177, 42 L. Ed. 589, the court held that where an order appointing a receiver also granted an injunction, the appeal carries up the entire order, "and the case may, indeed, on occasion be considered and decided on its merits."

The question whether or not a location of a mining claim by an alien may be attacked in a suit between private parties has, whenever it has arisen, been answered in the negative by the decisions of the courts of the United States. Billings v. Smelting Co., 2 C. C. A. 252, 51 Fed. 338; Id., 3 C. C. A. 69, 52 Fed. 250; Mining Co. v. Megginson, 27 C. C. A. 63, 82 Fed. 89; Manuel v. Wulff, 152 U. S. 507, 14 Sup. Ct. 651, 38 L. Ed. 562. In the case last cited the court said:

"We are of opinion on the record that as Alfred Manuel was a citizen, if his location was valid, his claim passed to his grantee, not by operation of law, but by virtue of his conveyance, and that the incapacity of the latter to take and hold by reason of alienage was, under the circumstances, open to question by the government only."

When the bill which provides for a civil code for Alaska was pending in congress, the senate refused to modify the rule laid down by Manuel v. Wulff, and rejected an amendment to the bill,

which was introduced for the purpose of conferring upon the district court of Alaska the power to inquire into and to determine the question of the citizenship of a locator of mining claims in that district. In further support of this view of the law, reference may be made to the act of congress of March 2, 1897, concerning the right of aliens to hold and own real estate in the territories. 29 Stat. 618. The act permits an alien to sell any lands in the territories before escheat proceedings, if the lands are held by him against the prohibition of the statute, and to receive the proceeds of such lands if sold in escheat proceedings, and also to avoid escheat at any time before final judgment, by declaring his intention to become a citizen, or by becoming a bona fide resident, of the territory. Section 2 contains this provision:

"This act shall not be construed to prevent any persons not citizens of the United States from acquiring or holding lots or parcels of lands in any incorporated or platted city, town or village, or in any mine or mining claim in any of the territories of the United States."

As between the parties to the present suit, it is clear, in the light of authority, that the question of citizenship is not in issue, and that the alienage of the original locator is not involved. That is a matter which concerns the government of the United States, and with which the parties to this litigation have nothing to do. The case presents only the question of the right of the possession as between two contesting locators. It in no way involves the ultimate right of either to a patent to the mining claim. The whole of the merits of the controversy may be determined upon the consideration of this single question, and it would be fruitless, as well as vexatious, to remand the case for further litigation. The order appointing the receiver is reversed, and the cause remanded, with instructions to dismiss the bill.