WARD BAKING CO. et al. v. WEBER BROS. et al.

(Circuit Court of Appeals, Third Circuit. January 17, 1916.)

No. 2010.

1. APPEAL AND ERROR ☜874(2)—INFRINGEMENT SUIT—APPEAL FROM INTER-LOCUTORY DECREE—SCOPE OF REVIEW.

Under Judicial Code (Act March 3, 1911, c. 231) § 129, 36 Stat. 1134 (Comp. St. 1913, § 1121), which authorizes an appeal from an interlocutory decree granting or refusing an injunction the complainant in an infringement suit in which an injunction is prayed for may appeal from an interlocutory decree, which dismisses the bill as to certain of the claims sued on, either on the ground of invalidity or noninfringement; but such appeal brings up for review only that part of the decree relating to such claims and specified as error, and defendant can have the other parts of the decree reviewed only by a cross-appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3533; Dec. Dig. ☜874(2).]

2. PATENTS ☜328—VALIDITY AND INFRINGEMENT—MACHINE FOR WORKING AND SHAPING DOUGH.

The Corby & Corby patents, reissue patent No. 11,751 (original No. 590,133), for a machine for working and shaping dough, claims 8, and 13, *held* not infringed; No. 611,563, for improvements on such machine, claims 1, 2, 4, 5, and 16, *held* void for lack of invention; and No. 649,437, claim 6, and No. 672,414, claim 13, also for improvements *held* not infringed, and claims 10, 11, and 16 of the latter void for lack of invention.

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Suit in equity by the Ward Baking Company and the Thomson Machine Company against Harry J. Weber and Frederick W. Weber, trading as Weber Bros., and the J. H. Day Company. From the decree, complainants appeal. Affirmed.

The following is the opinion of the District Court, by Haight, District Judge:

The Ward Baking Company, one of the plaintiffs, is the owner of, and the Thomson Machine Company, the other plaintiff, is the exclusive licensee to manufacture and sell under, the following patents, which were each issued to William S. and Charles I. Corby, viz.: Reissue No. 11,751, dated June 20, 1899; No. 611,563, dated September 27, 1898; No. 649,437, dated May 15, 1900; and No. 672,414, dated April 16, 1901. It is alleged that a machine manufactured by defendant the J. H. Day Company, and used by the defendants Weber Bros., infringes the following claims of these patents, viz.: Claims 6, 7, 8, 9, 11, 12, 13, 15, and 17 of reissue No. 11,751; claims 1, 2, 4, 5, and 16 of No. 611,563; claim 6 of No. 649,437; and claims 10, 11, 13, and 16 of No. 672,414. All of the patents relate to a machine for working and shaping dough. The reissued patent is the basic one; the others covering merely variations and improvements thereof.

J. H. Day, to whose business the J. H. Day Company succeeded, had originally been licensed by the patentees to manufacture and sell dough-moulding machines under the patents in suit. Subsequently the patents were transferred to one of the predecessors in title of the Ward Baking Company, to whom Day also transferred his rights in the patents. In 1908 the J. H. Day Company entered into an agreement with the predecessor in title of the Ward Baking Company, whereby the former was to manufacture and sell the dough moulders and pay the latter a royalty. A number of machines

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were manufactured under this agreement. It was later superseded by the exclusive license, granted in 1911 to the C. A. Thomson Machine Company, whose name was subsequently changed to the Thomson Machine Company. This latter company had been manufacturing and selling a dough-moulding machine in competition with the machine of the patents in suit, and in 1910 a suit was instituted in the Eastern District of Pennsylvania by the predecessor in title of the Ward Baking Company against the C. A. Thomson Machine Company for an alleged infringement of reissued patent No. 11,751. This suit was settled, and the exclusive license before mentioned, granted to the C. A. Thomson Machine Company. In 1912 the C. A. Thomson Machine Company, having learned that the Day Company was making a machine which it considered infringed the patents in suit, caused a notice to be sent to the latter company to that effect, and called upon it to refrain from further infringement. Thereafter this suit was instituted.

The machine of the patent was designed to be used in one of the processes of making bread on a large scale. After the dough has acquired the proper degree of lightness, it is separated into small masses, to be made into loaves for baking. It is the design of the machine of the patent to knead and shape such masses. The machine of the reissued patent may be briefly described thus: Upon a suitable frame a rigid table is constructed, at each end of which is mounted a roller, and over the rollers an endless belt or apron is passed, the upper part of which rests upon and travels over the table. Above the table and the belt is a yieldingly supported pressure board held in place by suitable devices, with means provided for adjusting it toward and away from the table and belt. It is between this pressure board and the belt that the dough is kneaded and shaped as it is carried along by the belt. The batch of dough which is to be so converted into a loaf first passes between a pair of rollers, mounted at the forward end of the frame, by which it is sheeted. At the front entrance of the space between the top of the belt and the under side of the pressure board is a device referred to in the patent as a "curler." Its function is to engage the front end of the dough sheet after it has passed between the sheeting rollers onto the carrying belt and retard it sufficiently to start it coiling or rolling up so that the sheeted dough will pass into the space between the traveling belt and the pressure board (which space is greater than the thickness of the sheeted dough) in a coiled or thickened condition, and thus will be kneaded and shaped into a loaf. The curler of the reissued patent is not an integral part of the pressure board. It is yielding, so that, as the dough sheet, which is engaged by it, is rolled up or coiled, it rises out of the way and thus allows the coiled or rolled-up mass to pass into the passageway between the pressure board and the belt. It normally projects into the path of the advancing dough sheets, so as to constrict or narrow the width of such passageway. The "curler" is an element of each of the claims in suit.

The defenses are stated, in defendants' brief, to be as follows: That the reissued patent is void because no statutory ground for reissue existed; (2) that each patent is void for want of novelty; (3) that each is void for want of invention; and (4) that the defendants' machine does not infringe. Several other matters are also apparently urged as defenses, or as reasons why the relief which the plaintiffs seek should not be granted in equity. These will be first considered, and then the main defenses in the order stated.

1. It is contended on behalf of the defendants that the reissued patent is invalid because the description mixes up the new and old, and does not describe what the invention really is. Evans v. Eaton, 7 Wheat. 356, 5 L. Ed. 472, and Jacobs Mfg. Co. v. Almond Mfg. Co., 177 Fed. 935, 101 C. C. A. 215 (C. C. A. 2d Cir.), are cited in support of this contention. It is also urged that the patent is void because the specification "by ambiguity and a needless multiplication of nebulous claims is calculated to deceive and mislead the public." In support of this Carlton v. Bokee, 17 Wall. 463, 21 L. Ed. 517, is cited. These contentions may conveniently be considered together. It is quite true that the specification does not point out what elements of the machine were old, but the invention and patent relate, not to a single element or an improvement on an existing machine, as in one phase of Evans v. Eaton,

supra, but to a combination of elements, producing as a whole, as is claimed, an entirely new device. What the patentees claimed as their invention are the combinations set forth in the respective claims; the devices of which the machine is composed are specifically described, their mode of operation given, and the new and useful result to be accomplished is pointed out. Unless defective in other particulars, the specification is therefore sufficient. Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235, Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54. If in fact the combinations claimed to be new are not so, or if the invention is merely an improvement on an old device, the patent is void on other grounds. Nor can I perceive that the description of the invention is not "in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to make, construct * * * and use the same." Rev. Stat. § 4888 (Comp. St. 1913, § 9432). The important feature of the invention, so far as the claims in suit are concerned, is the "curler." Not all of the claims of the patent however, include this as an element of the combination. It is stated in the specification that some of the advantages of the invention may be retained in a machine without a curling device. Because of this statement in the specifications, counsel for plaintiff seems to contend that the further description of a curler in the specifications makes the latter ambiguous and indefinite. This clearly is without merit. The curler is a very essential element of some of the claims, whereas it is not included in others. As it was an essential part of some of the claims, it was necessary to be described; but the inventors pointed out that there were other combinations which were claimed and in which the curler formed no part. Exception is also taken to the explanation of the meaning of the term "curler." The curler is first described thus: "Adjacent to the front end of the pressure board B, we arrange a yielding pressure device I, under which the dough must pass before it enters the space between the belt and the board B, and which operates to curl or fold over the advancing end of the mass of dough, and which from its function we term the 'curler.'" Then follows a description of the preferable form of the curler and the manner and mode of its operation. Later on the description contains this: "By the term 'curler,' as employed in this case, we refer to a device which effects a curling, rolling, or folding over or other thickening of the forward ends of the dough masses, which device is untimed in its operations relative to the other moving and operative parts of the apparatus so that in operation it is always in position and ready to act upon the dough masses, whether they be delivered rapidly or slowly, or at regular or irregular intervals." It is urged that these two provisions make the meaning of the curler indefinite and ambiguous. It should, perhaps, be noted that the latter provision was not in the original patent, but was included in the reissue, apparently to meet some objections of the examiner. There is no inconsistency, that I can see, between the two descriptions. They both describe a device which causes a curling, rolling, or folding over of the dough masses before the latter are carried into the space between the belt and the pressure board. The effect of the latter provision was merely to indicate that the inventor was not to be bound by the particular form of "curler" described. The same may be said of the objection to the parts of the specifications which refer to the "pressure board." I cannot perceive any merit in the contention that there was a needless multiplication of claims, even if such in itself invalidates an otherwise valid patent. Certain claims do not embrace the curler element, and the reason why they do not is explained in the specification, as above stated. Those which do include the "curler" describe it in different ways, as is customary, one broadly, to embrace infringing devices, and the others more narrowly, to avoid devices which might anticipate the broad claim.

2. I fail to appreciate any force in defendants' contention that relief should be denied to the plaintiff in equity because the reissued patent will shortly expire, or because suits which had formerly been instituted against alleged infringers were not prosecuted to a conclusion, or because the Thomson Machine Company is manufacturing machines under a different patent than any of those in suit, or because of all of these facts taken together. The reissued patent has in fact expired since the beginning of this suit. If, however, the

defendants have infringed it, the plaintiffs are entitled to the usual accounting, although, of course, not now to an injunction. So far as the evidence reveals, this suit was brought promptly after the plaintiffs learned that the. Day Company was constructing and selling, and Weber Bros. were using, what the plaintiffs considered an infringing machine. J. H. Day and the J. H. Day Company had, pursuant to a license, manufactured machines under the original patent granted the Corbys (No. 590,133, of which patent No. 11,· 751, now in suit, is a reissue) from shortly after the time it was issued until the license was granted, in 1911, by the predecessor in title of the Ward Baking Company, to the Thomson Machine Company. Two of the suits which were not prosecuted to a conclusion were instituted in 1898, and the other one against the C. A. Thomson Machine Company and others in 1910. The abandonment of these suits could in no way have misled the J. H. Day Company, even if such could be considered a proper ground for denying relief, because after the suits were abandoned the J. H. Day Company continued to operate under its license. The license which was granted to the Thomson Machine Company was the result of the litigation instituted against that company by the owners of the reissued patent, and as this license superseded the license which had formerly been granted to J. H. Day Company it follows that the latter must have had notice of it and of the reason why the suit was discontinued. The granting of the license to a competitor who was manufacturing under a different patent could not under any reasonable view have led the Day Company to believe that the owners of the patent considered it of no validity, but should rather indicate that the alleged infringer considered it valid and that it was necessary to acquire a license to manufacture under it in order to avoid further infringement. But at any rate the fact that the Thomson Machine Company saw fit to manufacture machines under a patent of which it was the owner, and not under the patents in suit, either standing alone or taken in connection with the fact that suits which were instituted against it and others for infringement were subsequently either discontinued or not prosecuted, affords neither justification for an infringement of the patent nor a reason why a court of equity should deny relief as against an infringer.

3. It is urged that the reissued patent is invalid because no statutory ground for reissue existed. Counsel have not pointed out, however, wherein the statutory ground is lacking, except to state that the meaning of the word "curler" in claim 6 of the reissued patent (which claim is the same as claim 6 of the original patent) has been broadened by a general definition of the curler which is inserted in the description of the reissued patent; otherwise, they have contented themselves with quotations from the opinions in several cases, without showing their applicability to the facts of this case. I have considered however, the validity of the reissue in the light of those cases. It is, of course, entirely well settled that a reissued patent cannot cover any other or different invention than that which is described in the original patent; but it is apparent from a comparison of the original and the reissued patents in this case that the latter is not open to that objection. While it is also true that a reissued patent is invalid if the defect in the original was not due to inadvertence, accident, or mistake, it is equally true that the courts will not review the decision of the Commissioner upon the question of inadvertence, accident, or mistake unless it is manifest from the record. Topliff v. Topliff, 145 U. S. 156, 171, 12 Sup. Ct. 825, 36 L. Ed. 658; Hobbs v. Beach, 180 U. S. 383, 395, 21 Sup. Ct. 409, 45 L. Ed. 586. The record in the Patent Office does not by any means make manifest that any defect in the original patent, which the reissue sought to cure, was not due to an actual mistake or inadvertence. The first 10 claims of the reissue are identical with the 10 claims of the original patent, and the remaining claims of the former, rather than broadening the scope of the claims of the original, limit them.

Quite a different situation is therefore presented than if they broadened the claims of the original. Mahn v. Harwood, 112 U. S. 354, 362, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665. What the patentees undoubtedly desired to protect themselves against was the possibility that the combinations of the original claims were too broad; and they therefore sought to have introduced into

the reissue additional claims, narrower and more limited. The patentees were entitled to claim their invention in the broadest way in which it could be properly claimed as well as the narrowest. If, through accident or inadvertence or mistake it was not claimed in the latter way, and the validity of the patent was thereby jeopardized, they were entitled to have the mistake remedied by a reissue, and they were not compelled to await a suit upon the original patent in order to have it determined whether its claims were too broad. The remarks of Mr. Justice Brown in Hobbs v. Beach, supra, 180 U. S. at 394, 21 Sup. Ct. 414, 45 L. Ed. 586, are applicable here: "Possibly the error was such as would not have impaired the patentee's rights under his original designs; but he was entitled to the full scope of his invention, and if he were dissatisfied with the drawings as they stood, and the error was purely an inadvertent one, we think it was within the jurisdiction of the Commissioner of Patents to order the patent to be reissued. The defense is purely a technical one. * * * To justify a reissue it is not necessary that the patent should be wholly inoperative or invalid. It is sufficient if it fail to secure to the patentee all of that which he has invented and claimed. * * * The only alternative of a reissue was a suit upon the original patent, in which the patentee would be compelled to take his chances of success, notwithstanding the error in his drawing when in case of defeat the time in which to obtain a reissue might have expired. We do not think he should be driven to this expedient." See also Steiner & Voeghtly Company v. Tabor Sash Company, 178 Fed. 831 (C. C. N. J.). It also appears that claims 6, 8, and 9 of the reissue are the same as in the original patent. If they were valid in the original, they are valid in the reissue. Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601; Mahn v. Harwood, supra; Thomson-Houston Electric Company v. Black River Traction Company, 135 Fed. 759, 68 C. C. A. 461 (C. C. A. 2d Cir.). Of course, if the description in the reissue has given a broader meaning to any element of the claims than it had in the original patent, the claims of the reissue would not be the same as the claims of the original, and the rule just stated would not apply.

It is urged, as before stated that the definition of the "curler" in the description of the reissue has imparted a new meaning to the word "curler" as used in the claims thereof, the effect of which is to broaden the scope of the original claims, in which the curler was an element, and thereby bring the reissued patent within the well-settled rule first announced in Miller v. Bridgeport Brass Co., 104 U. S. 350, 26 L. Ed. 783. I do not think, however, that the general definition of the "curler" which is added to the description of the reissued patent, in any way substantially broadened the meaning of that term. Irrespective of what I hold, as above stated, to have been the purpose of inserting the general definition, the patentees would not have been confined to the particular form of the curler illustrated and described in the original patent, but, in view of the prior state of the art, would have been entitled to a fair range of equivalents. But if my conclusion in this respect is wrong, and the claims of the original which are also in the reissue, are broader, still I do not think that they are invalid for that reason, because they were for substantially the same invention, and the reissue was applied for in a reasonable time—about six months—after the original was granted, and before, as far as the record shows, any intervening rights of third persons had arisen. Topliff v. Topliff, supra, 145 U. S. 165, 12 Sup. Ct. 825, 36 L. Ed. 658. This case is not like Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. 537, 28 L. Ed. 963, where a reissue was held invalid which was applied for only a little over three months after the original patent was granted. In that case the patentee waited until the defendants produced their device and then applied for such enlarged claims as to embrace that device—which had not been covered by the claim of the original patent—and it was apparent, from a comparison of the two patents, that the application for a reissue was made merely to enlarge the scope of the original. I conclude, therefore, that the reissued patent was not improperly granted.

4. Nearly 200 printed pages of the record are taken up with patents showing the prior state of the art, the greater part of which might better have been omitted. Catalogues have also been offered. Of these only the French

patent issued to Dathis in 1885 seems to require any extended consideration. The others may be disposed of with the statement that they show that all of the elements of the claims in suit of the reissued patent, with the exception of the curler, were old in the art. In none of them, however, is there found a device corresponding to the curler of the reissued patent or an equivalent thereof. The flaring mouths of the Hotine, Keller, Kumler, and Driscoll patents are clearly not the equivalents of the curler of the reissued patent. They do not perform the same function. The purpose of the curler is to roll or coil the dough before it is carried into the passageway between the traveling belt and the pressure board. This is accomplished by constricting the entrance to the passageway as before described. Manifestly, if the passageway at the opening is larger than it is inside, as in the devices with the flaring mouths, there could be no rolling or coiling of the dough before it enters the passageway. If the dough were in sheet form of less thickness than the distance between the upper side of the belt and the under side of the pressure board when entering the passageway, it would pass through without any kneading taking place. It was to overcome this that the curler of the patent in suit was devised.

It is urged on behalf of the defendants that the Dathis patent is a complete anticipation of all of the patents in suit. If it does not anticipate the reissued patent, it does not anticipate any of the others. It is an apparatus designed to knead bread dough. It has a frame, at each end of which is mounted a roller, over which is passed an endless belt on which the dough is carried, and it has the upper plane or pressure board, as in the reissued patent. The dough is placed, as in the reissued patent, on the endless belt or conveyer, and is carried by it into the passageway between the belt and the pressure board and is thus kneaded. Underneath the belt, instead of the rigid table of the patent in suit, V-shaped laths are placed. These, as stated in the patent, form a lower plane and "by the rigidity that they give to the belt or conveyer whenever they come in contact with it, give the dough the combined flattening and stretching." Here the similarity between the machines ends. The shape of the laths tends to lengthen out the mass of dough, and the number used depends upon the thickness and length of the loaves desired to be made. The drawings show a third roller mounted above the forward roller over which the belt passes. The purpose of this roller as stated in the patent, is to exercise a sufficient pressure on the belt to prevent the trouble which might result from its insufficient tension. The forward end of the upper plane or pressure board is beveled, thus giving to the entrance of the passageway between the upper and lower planes a flaring mouth. There is no device independent of the pressure board and belt to perform the function of the curler of the patent in suit. The specifications state that the upper plane can be raised, lowered, or inclined as desired. The defendants contend that if this upper plane is inclined towards the forward end of the machine, the passageway between the belt and the pressure board is narrowed or constricted, as it is in the plaintiffs' patent by means of the curler; that the yielding feature of the curler is supplied by the yielding and flexible character of the belt and the foremost lath on which the belt rests, and that therefore this machine can be made to accomplish, without modification, the same function in substantially the same way as the machine of the plaintiffs' patent, the only difference between them being in the structure of the parts. Unless the upper plane is thus inclined and there is a yielding of the belt and laths, the machine clearly has no equivalent of the curler, for the reasons above given in discussing the other patents of the prior art.

If it be assumed that the defendants' contention in this respect is correct, the question arises whether the descriptions and drawings of the Dathis patent contain or exhibit a substantial representation of the invention of the patent in suit, in such full, clear, and exact terms as to enable any person skilled in the art or science to which it pertains without the necessity of making experiments, to practice that invention, for, if they do not, this patent would not negative novelty in the patent in suit. Hanifen v. Godshalk, 84 Fed. 649, 28 C. C. A. 507 (C. C. A. 3d Cir.); Seymour v. Osborne, 11 Wall. 516, 555, 20 L. Ed. 33; Cawood Patent, 94 U. S. 695, 704, 24 L. Ed. 238. It is en-

'tirely clear, both from the description and the claims of the reissued patent, that the curler of that machine is a device separate and distinct from the pressure board and the traveling belt, and that it is designed to engage the dough before it reaches the pressure board, and roll it up. There is nothing in the description or drawings of the Dathis patent which in any way suggests such a curler. In describing the operation of the machine it is stated that the dough is placed on the belt in prepared masses, either by hand or by a chain of buckets or by a chain pump, etc., and then carried by an endless belt C under the board F, fixed above the belt. The drawings also indicate that the mass of dough designed to be kneaded should be greater in diameter than the space between the top of the belt and the under side of the pressure board, and that it was not designed to operate on sheets of dough. There is nothing said in the Dathis patent about the laths being flexible; on the other hand, their purpose is stated to be to give "rigidity" to the belt whenever they come in contact with it. There is no mention of a curling operation or feature, and it would seem that it was never contemplated. The machine evidently was designed primarily to flatten and elongate lumps of dough greater in diameter than the space between the belt and the under side of the pressure board. The two machines, so far as the curler element is concerned, are quite different in principle. I cannot find that the disclosure of the Dathis patent measures up to the rule above stated, nor can I find a substantial identity between the two machines.

5. In regard to the contention that the claims in suit of the reissued patent are void for lack of invention, I think that the combination of the curler, which was new, with the other elements constituted invention. There was far more than a change in structure over Dathis. The latter did not, as I endeavored to show before, describe a curler or an equivalent thereof. The principle and mode of operation of the machines is quite different.

As patent No. 611,563, at least as far as the claims in suit are concerned, differs from the preceding patent only in the addition of the "shield," I am constrained to find that it lacks invention. At the most the only change made was in the form of the curler of the earlier patent. Such devices as the shield apparently were old in the art, and it is scarcely conceivable, if in practice it was found that the dough sheet might at times pass over, rather than under, the curler, that any ordinary mechanic would not have done just what the Corbys did, namely, extend the face of the curler towards the rollers through which the dough is fed to the belt. Neither do I think that claims 10, 11, or 16 of patent No. 672,414 exhibit invention. Their only new feature is a series of projections arranged on the under side of the pressure board to engage and operate upon the dough. This was but a duplication of the rib H of the sixth claim of patent No. 649,437. Under well-settled principles this did not constitute invention. Claim 13 on this point presents more difficulty, because one of the elements is a pressure board, having a pivotal part provided with projections. There is nothing in the prior art exhibiting a pressure board of this construction, and it may be that it constituted invention to have devised it; but I do not find it necessary to decide this question, because I do not think the defendants' machine infringes this claim.

6. The defendants' machine operates on the same principle as the machine of the reissued patent. It has the sheeting rollers, and in lieu of the traveling belt a rotary drum which admittedly is a mechanical equivalent of the traveling belt. There is an opposing pressure device, consisting of a semicircular compression plate, which performs the same function in exactly the same way as the pressure board of the reissued patent. It also has a curler at the forward end of the pressure plate; that is to say, at the end where the dough is fed into the passageway between the drum and the pressure plate, which constricts the entrance to the passageway, as does the curler of the reissued patent. The curler of the defendants' machine consists of a plate suspended at its upper end above the drum, at the forward end of the pressure plate. This upper end, with which the dough first comes in contact, is curved upward and away from the drum, making a flaring mouth, and at the same time a shield to prevent the forward end of the dough sheet from

passing over the upper edge of the pressure plate. The surface of the pressure plate is corrugated, so as to engage the dough as it is carried forward by the drum and to cause it to roll, curl, or thicken. These corrugations perform the same function and are the equivalent of the retarding shoulder of some of the claims of the reissued patent. The curler is not affixed to the pressure plate, but the lower end is provided with a hook clip extending downward and which straddles the upper edge of the pressure board or plate; the hook being attached to the curler plate in such a manner that the upper end of the pressure plate is between the lower end of the curler plate and the downward extending shank of the hook clip. Normally, when not in operation this shank of the hook clip rests upon the upper end of the pressure plate, and when in operation—that is to say, when the dough is passing under it—the curler plate is lifted, so that its lower end is brought in contact with the upper end of the compression plate. When in a position of rest, or not in operation, the curler plate hangs a short distance from the drum. As the dough passes through and is rolled or curled, the pressure plate is pressed upwards, and thus moves out of the path of the advancing dough, and then drops back into place, in the same manner as the curler of the reissued patent. The curler is mounted in a way which is substantially equivalent to being mounted on a fixed axis relative to the advancing means.

The weight of evidence tends to show that the forward end of a piece of dough passing between the sheeting rollers is engaged by the curler and curled before it entirely disengages the rollers. To all intents and purposes the curler of the defendants' machine performs exactly the same function in substantially the same way as the curler of the reissued patent. I therefore find that it infringes claims 6, 7, 9, 11, 12, 15 and 17 of the reissued patent. I do not think it infringes claim 8, because one of the elements of that claim is "a spring which holds the curler toward the belt." There is no such element in the defendants' machine, nor an equivalent thereof. Claim 13 is limited to a "longitudinally stationary pressure board." The pressure board of the defendants' machine is semicircular. As the patentees saw fit in this claim to limit the shape of the pressure board and to make the shape an element of their claim, I do not think that this claim is infringed by the defendants' machine. Claim 6 of patent No. 649,437 embraces only one element; that is to say, a pressure board with a curling device consisting of a rib located near its feed end. The pressure plate of the defendants' machine, considered as distinct and separate from the curler plate, has no such rib. The curler plate of the defendants' machine is not an integral part of the pressure plate. It is movable and yieldingly pivoted. It is this feature, among others, which causes it to infringe the curler element of the reissued patent. It cannot be said that the curler of the defendants' machine is a separate and distinct element and at the same time that it is an integral part of the pressure board. At the time this patent was applied for the field of invention as respects the curler had been narrowed by the previous patents. It is therefore not entitled to the same range of equivalents as the earlier patents. For substantially the same reasons I do not think that defendants' machine infringes claim 13 of patent No. 672,414. The curling plate of the former is neither an integral part of the pressure plate, nor is it pivotally connected thereto.

A decree will be signed in accordance with these conclusions. No costs will be allowed, as neither party has prevailed as to all of the claims in controversy.

K. M. Everett, of Newark, N. J. (Leo. J. Matty, of New York City, of counsel), for appellants.

James L. Hopkins, of St. Louis, Mo. (Clore, Dickerson & Clayton, of Cincinnati, Ohio, of counsel), for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The four devices in controversy relate to machines for working and shaping dough, and are capable of being used conjointly. The principal patent is reissue No. 11,751, dated June 20, 1899, the original having been issued September 14, 1897; the other three are for minor improvements, No. 611,563, issued September 27, 1898, No. 649,437, issued May 15, 1900, and No. 672,414, issued April 16, 1901. The Ward Baking Company acquired title to all the patents, and in December, 1912, brought this suit to restrain Weber Brothers from infringement. In paragraph XVI the bill specified the claims upon which the company relied, these being 19 in number, 9 belonging to the first patent, 5 to the second, 1 to the third, and 4 to the fourth. After a final hearing on pleadings and proofs, an interlocutory decree was entered declaring the reissue to have been properly granted, and upholding the novelty of the 19 claims in suit. The decree also declared the 9 claims of the reissue to be otherwise valid, and decided that 7 of them had been infringed. The 5 claims of the second patent were held void for lack of invention over the reissue, and 3 claims of the fourth patent were also held void for lack of invention over the only claim (the sixth) of the third patent that is involved. The remaining 2 claims of the reissue, the only claim of the third patent that is involved, and 1 claim of the fourth patent, were held to be infringed. No finding was made concerning the validity of the 6th claim of the third patent. From this decree the Baking Company alone has appealed, and assigns for error so much of it as affects the company's interest adversely. The defendants have not appealed, but they assert, nevertheless, that the whole decree has been brought up by the company's appeal, and that any part of it is open to attack by either side. Accordingly they specify the parts to which they object, and cite in support of their position Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810. The argument requires us to consider the scope of that decision and of some later cases.

The decision turned on the construction of section 7 of the act of 1891 (Act March 3, 1891, c. 517, 26 Stat. 828) establishing the Circuit Courts of Appeals; and the question was stated by the court to be:

" * * * Whether, in a suit in equity for the infringement of a patent, an appeal to the Circuit Court of Appeals from an interlocutory order or decree of the Circuit Court, granting an injunction, and referring the case to a master to take an account of damages and profits, may be from the whole order or decree, or must be restricted to that part of it which grants the injunction, and whether the Circuit Court of Appeals, upon such an appeal, may consider and decide the merits of the case, and, if it decides them in the defendant's favor, may order the bill to be dismissed."

Having pointed out that the federal courts were not completely in harmony on this subject, the court called attention to the fact that in England and in New York and New Jersey the appellate courts in chancery had power on appeal from an interlocutory decree to examine the merits of the controversy, and to dismiss the bill if the merits were with the defendant, thus saving both parties the needless expense of going on with the suit. But this practice had never prevailed in the federal courts; there no appeal in equity would lie except from a

final decree, and "an order or decree in a patent cause, whether upon preliminary application or upon final hearing, granting an injunction and referring the cause to a master for an account of profits and damages, was interlocutory and not final, and therefore not reviewable on appeal before the final decree in the cause."

This being the condition of the federal law in 1891, the court took up section 7 of the act establishing the Circuit Courts of Appeals, which provided as follows:

"* * * * Where, upon a hearing in equity in a District Court, or in an existing Circuit Court, an injunction shall be *granted or continued* by an interlocutory order or decree, in a cause in which an appeal from a final decree may be taken under the provisions of this act to the Circuit Court of Appeals, an appeal may be taken from such interlocutory order or decree *granting or continuing* such injunction to the Circuit Court of Appeals"

—and declared that this section authorized, "according to its grammatical construction and natural meaning, an appeal to be taken from the whole of such interlocutory order or decree, and not from that part of it only which grants or continues an injunction." The object of the section was stated in the following paragraph:

"The manifest intent of this provision, read in the light of the previous practice in the courts of the United States, contrasted with the practice in courts of equity of the highest authority elsewhere, appears to this court to have been, not only to permit the defendant to obtain immediate relief from an injunction, the continuance of which throughout the progress of the cause might seriously affect his interests, but also to save both parties from the expense of further litigation, should the appellate court be of opinion that the plaintiff was not entitled to an injunction because his bill had no equity to support it."

In Re Tampa R. R. Co., 168 U. S. 588, 18 Sup. Ct. 179, 42 L. Ed. 589, the court again considered the subject, and said:

"We are not called on to say that an appeal would lie from an order simply appointing a receiver, but where the order also grants an injunction, the appeal provided for may be taken, and carries up the entire order, and the case may indeed, on occasion, be considered and decided on its merits."

In Highland Railroad v. Equipment Co., 168 U. S. 630, 18 Sup. Ct. 241 (42 L. Ed. 605), the court had before it the 1895 amendment of section 7 (Act Feb. 18, 1895, c. 96, 28 Stat. 666), which changed the section so as to read:

"That where, upon a hearing in equity in a District Court or a Circuit Court, an injunction shall be granted, continued, *refused, or dissolved* by an interlocutory order or decree, *or an application to dissolve an injunction shall be refused*, in a case in which an appeal from a final decree may be taken under the provisions of this act to the Circuit Court of Appeals, an appeal may be taken from such interlocutory order or decree granting, continuing, *refusing, dissolving, or refusing to dissolve* an injunction to the Circuit Court of Appeals."

And the court declared that, when an appeal is taken from an interlocutory order or decree, either granting or dissolving an injunction—

"the whole of such interlocutory order or decree is before the Court of Appeals for review, and not simply that part which grants or dissolves the in-

junction, and that on the hearing in the Court of Appeals that court may consider and decide the case upon its merits."

But the court went on to say that Smith v. Vulcan Iron Works and In re Tampa Railroad proceeded upon the ground that in each of those cases there was a distinct order granting, continuing, or dissolving an injunction, while in the case then before it there was no such order, although a receiver had been appointed and as a part of such appointment there had been the usual command to the receiver to take, and to the defendant to surrender, possession of the Highland Railroad's property. The court stated that the question was not whether some directions of a mandatory nature in the nature of an injunction might not properly be included in an order appointing a receiver, but whether Congress in this legislation (section 7, as amended) had provided for appeals in any case except where an injunction, technically speaking, was either the sole or a principal part of the order or decree; and the question was answered by deciding that if Congress had intended to permit appeals from orders appointing receivers, as well as from orders in respect to an injunction, an express provision to that effect would doubtless have appeared in the statute:

"Its omission of the one and the mention of the other is a clear declaration that only one should be the subject of appeal and the other not. And it would savor of judicial legislation to hold that, although Congress has not authorized appeals from orders appointing receivers, the mere fact that in such an order there is a direction of a mandatory character, either expressed or implied, in respect to taking possession, makes it appealable, as an order granting an injunction."

In Kirwan v. Murphy, 170 U. S. 209, 18 Sup. Ct. 592, 42 L. Ed. 1009, the ruling of Smith v. Vulcan Iron Works was stated to be that the Circuit Court of Appeals, on appeal from an interlocutory order or decree granting an injunction or ordering an accounting in a patent suit, might consider and decide the case on its merits, and thereupon render or direct a final decree dismissing the bill.

And in Mast v. Stover Co., 177 U. S. 494, 20 Sup. Ct. 712 (44 L. Ed. 856), the decision in Smith v. Vulcan Iron Works was again said to be:

" * * * That, if the appellate court were of opinion that the plaintiff was not entitled to an injunction because his bill was devoid of equity, such court might, to save the parties from further litigation, proceed to consider and decide the case upon its merits, and direct a final decree dismissing the bill."

In the Courts of Appeals, the following cases are in line with the foregoing decisions: United States Co. v. American Co. (C. C. A. 7) 82 Fed. 250, 27 C. C. A. 118; Carson v. Combe (C. C. A. 5) 86 Fed. 210, 29 C. C. A. 660; Stover Co. v. Mast (C. C. A. 7) 89 Fed. 336, 32 C. C. A. 231; Texas Ass'n v. Storrow (C. C. A. 5) 92 Fed. 9, 34 C. C. A. 182; Tornanses v. Melsing (C. C. A. 9) 109 Fed. 711, 47 C. C. A. 596; Berliner Co. v. Seaman (C. C. A. 4) 110 Fed. 33, 49 C. C. A. 99; Worth Co. v. Bingham (C. C. A. 4) 116 Fed. 793, 54 C. C. A. 119; Frye Co. v. Meyer (C. C. A. 9) 121 Fed. 535, 58 C. C. A. 529; Kerr v. New Orleans (C. C. A. 5) 126 Fed. 925, 61 C. C. A.

450; and Co-operating Co. v. Hallock (C. C. A. 6) 128 Fed. 597, 64 C. C. A. 104.

With one exception, each of these cases, whether in the Supreme Court or in the Courts of Appeals, has to do with an interlocutory decree granting an injunction against the defendant, and in each it was the defendant that appealed. The exception is Frye Co. v. Meyer, where an injunction had been granted originally against the defendant, but had been afterwards modified to the plaintiff's disadvantage, and it was the plaintiff that appealed from the modification. But the Court of Appeals of the Ninth Circuit, saying that "this appeal is, in effect, an appeal from an order of the District Court dissolving an injunction," held that the merits of the case were brought up, and decided them in the plaintiff's favor, setting the modifying order aside.

This brings us to Ex parte National Enameling Co., 201 U. S. 156, 26 Sup. Ct. 404, 50 L. Ed. 707, a case that requires careful consideration. The National Company had sued the New England Company for infringement of a patent, and had brought the case to a hearing on pleadings and proofs. The Circuit Court sustained 9 claims, but held the remaining 3 to be void. Of the 9 claims, 5 were held to be infringed, and 4 not to be infringed. As to 7 claims, therefore, the bill was dismissed, while it was sustained as to the remaining 5, and on these an account was ordered and the New England Company was enjoined. Thereupon the New England Company appealed to the Court of Appeals of the Second Circuit, and within a few days the National Company took a cross-appeal. Soon afterwards the cross-appeal was dismissed for want of jurisdiction, whereupon the National Company asked for a mandamus to reinstate the appeal. The Supreme Court refused the writ on the following ground: After pointing out that the decree in the Circuit Court was interlocutory, and not final, and that in the federal courts no appeal could ordinarily be taken except from a final decree, the opinion turned to section 7 of the act of 1891. This section had then been twice amended—once by the act of 1895 already referred to (28 Stat. 666), and once by the act of 1900 (Act June 6, 1900, c. 803, 31 Stat. 660); but the amendment of 1900 had in effect repealed the act of 1895, so that in 1906, when the Enameling Company's Case was decided, the section read as follows:

"Where, upon a hearing in equity in a District Court or in a Circuit Court, or by a judge thereof in vacation, an injunction shall be *granted or continued, or a receiver appointed,* by an interlocutory order or decree, in a cause in which an appeal from a final decree may be taken under the provisions of this act to the Circuit Court of Appeals, an appeal may be taken from such interlocutory order or decree *granting or continuing such injunction or appointing such receiver* to the Circuit Court of Appeals." Act April 14, 1906, c. 1627, 34 Stat. 116.

It will be noted that the section thus amended contains no provision authorizing an appeal from the refusal or dissolution of an injunction, or from the partial dismissal of a bill, and of course the language of the opinion is to be applied to that condition of things:

"It will be noticed that the appeal is allowed from an interlocutory order or decree *granting or continuing* an injunction, that it must be taken within 30 days, that it is given precedence in the appellate court, that the other proceedings in the lower court are not to be stayed, and that the lower court may require an additional bond. Obviously that which is contemplated is a review of the interlocutory order, and of that only. It was not intended that the cause as a whole should be transferred to the appellate court prior to the final decree. The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise especially ordered. * * * And the purpose of Congress in this legislation was that there be an immediate review of the interlocutory proceedings, and not an advancement generally over other litigation."

Taking up the case of Smith v. Vulcan Iron Works, upon which the National Enameling Company mainly relied, the court went on to say that:

"In that case it was held that, when an appeal is taken from an interlocutory order granting or continuing an injunction, the whole of the order is taken up, and the appellate court may (if upon an examination of the record as thus presented it is satisfied that the bill is entirely destitute of equity) direct a dismissal, and is not limited to a mere reversal of the order granting or continuing the injunction. Take an ordinary patent case. If an injunction is granted by an interlocutory order, and the order is taken on appeal to the Circuit Court of Appeals, and that court is of opinion that the patent is on its face absolutely void, it would be a waste of time and an unnecessary continuance of litigation to simply enter an order setting aside the injunction and remanding the case for further proceedings. The direct and obvious way is to order a dismissal of the case, and thus end the litigation. And such is the scope of the opinion in that case. * * * But nowhere in the opinion is it intimated that the plaintiff was entitled to take any cross-appeal or to obtain a final decree in the appellate court."

It was argued on behalf of the National Company that, since the bill had been dismissed as to 7 of the claims, the decree was final as to these, and the plaintiff was entitled to appeal. For the reason already given, the company could not rely on the amended section 7 of the act of 1891 (since the section gave no appeal in such a case), and the earlier cases, upon which the plaintiff did rely to sustain the position that under the general rules of law the decree was final, were distinguished by the court, and were held to have no application to the case in hand.

Since the decision of the Enameling Case, the court has referred to it twice, but merely as authority for the proposition that on appeal from an interlocutory order the Circuit Court of Appeals "might direct the bill to be dismissed if it appeared that the complainant was not entitled to maintain its suit" (Metropolitan Co. v. Kaw Valley District, 223 U. S. 523, 32 Sup. Ct. 248 [56 L. Ed. 533]), or as authority for the proposition that the Court of Appeals might "review the whole of the interlocutory decree, not merely the part granting the injunction, and [might] determine whether there was any insuperable objection, in point of jurisdiction or merits, to the maintenance of the suit, and, if there was, to direct a final decree dismissing the bill" (U. S. Fidelity Co. v. Bray, 225 U. S. 214, 32 Sup. Ct. 624, 56 L. Ed. 1055).

In several cases the Courts of Appeals have been called on to con-

sider the scope of the decision. In Page Co. v. Dow, 168 Fed. 704, 94 C. C. A. 209, the second Circuit stated its understanding to be that the Enameling Case had "made it necessary, when a trial judge held some claims to be valid and infringed and other claims to be invalid, to have two appeals on practically the same record—sometimes years apart—to secure a determination of the controversy." In Highland Glass Co. v. Schmertz Co., 178 Fed. 972, 102 C. C. A. 316, this court distinguished the Enameling decision from the case then under review, and showed its inapplicability to a situation where the defendant alone had taken the appeal. And in General Elec. Co. v. Allis Co., 194 Fed. 413, 114 C. C. A. 375, we followed the decision, where an interlocutory decree had dismissed the bill as to one of two defendants; such dismissal being held not to be an appealable order. In Electric Co. v. American Co., 184 Fed. 924, 107 C. C. A. 238, the eighth Circuit held the decision to cover in principle the case of "a suit for the infringement of different patents for the same or kindred inventions, which may be joined in one suit; and when in such a case the bill is sustained as to some of the patents but dismissed as to others by an interlocutory decree, no appeal lies from that part of the decree which dismisses the bill as to some of the patents until after the final decree." And the following cases also refer to the decision: Sheppy v. Stevens (C. C. A. 2) 200 Fed. 946, 119 C. C. A. 330; Howe Machine Co. v. Dayton (C. C. A. 4) 210 Fed. 804, 127 C. C. A. 351; Odell v. Batterman (C. C. A. 2) 223 Fed. 295, 138 C. C. A. 534; and Mershon v. Bay City Co. (C. C.) 189 Fed. 753.

Now, if section 7 of the act of 1891 had undergone no change since the decision of the Enameling Case, we should be obliged to hold that the Ward Baking Company could not appeal from the interlocutory decree before us, because in that event Congress would have given the company no such appeal, and none would be allowable under the general rules governing the federal courts. But the section *has* been changed in essential particulars. Since January 1, 1912, it has become section 129 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1134 [Comp. St. 1913, § 1121]), and now reads as follows:

"Where upon a hearing in equity in a District Court, or by a judge thereof in vacation, an injunction shall be granted, continued, *refused, or dissolved* by an interlocutory order or decree, or an application to dissolve an injunction shall be refused, or an interlocutory order or decree shall be made appointing a receiver, an appeal may be taken from such interlocutory order or decree granting, continuing, *refusing, dissolving,* or refusing to dissolve, an injunction, or appointing a receiver, to the Circuit Court of Appeals, notwithstanding an appeal in such case might, upon final decree under the statutes regulating the same, be taken directly to the Supreme Court."

In other words since the plaintiff is the party adversely affected by the refusal or the dissolution of an injunction, the section now gives the plaintiff the right to appeal therefrom. This covers the situation where a bill has been dismissed as to certain claims of a patent, whether the dismissal be put on the ground that the claims are void or on the ground that they have not been infringed; for there can be no more effectual refusal of an injunction than to dismiss the bill that

asks for such relief. It follows that the Baking Company's appeal properly brings up the questions that were decided against it, namely:

(1) Whether claims 8 and 13 of the reissue have been infringed by the defendants' machine.

(2) Whether claims 1, 2, 4, 5, and 16 of patent No. 611,563 involve invention over the reissue.

(3) Whether claims 10, 11, and 16 of No. 672,414 involve invention over claim 6 of No. 649,437; and

(4) Whether claim 6 of No. 649,437, claim 13 of No. 672,414, and the claims specified in (2) and (3) have been infringed by the defendants' machine.

We need not discuss these questions, however, for the District Judge has considered and decided them satisfactorily and we adopt his opinion thereon as the opinion of this court.

It remains to say a few words about the defendants' position. We find nothing in any of the foregoing cases that supports the argument presented on their behalf. It is a novel proposition that a party may have all the benefits of an appeal that has been taken by his adversary without taking an appeal on his own behalf. No case so decides, and no statute has so declared. There are legislative provisions and rules of court with which a party desiring to appeal must comply, and these would be impliedly nullified by such an irregular proceeding: A party appealing must ordinarily have his appeal allowed, and must specify the errors to which he objects. In order to protect his adversary, he must also give bond for such sum and for such purposes as may be required of him; and he must comply with the rules of court that define and govern his conduct as an appellant. It is true that the decree below does not place the defendants under injunction, but merely orders them to account, and it would seem, therefore, under the decisions considered above, that the statute did not give them the right of appeal. Nevertheless they claim all the advantages of such a position although they did not have the statutory right to occupy it, and even if they had they neither presented a petition, nor gave a bond, nor assigned errors, nor complied with the rules of court in any particular. In the absence of any authority sanctioning such a procedure, we decline to consider the questions that the defendants seek to raise.

The decree is affirmed.